PALAZZOLA v KARMAZIN PRODUCTS CORPORATION

Docket No. 180033. Submitted April 3, 1996, at Detroit. Decided April 22, 1997, at 9:00 A.M. Leave to appeal sought.

Joseph V. Palazzola, as personal representative of the estate of Chrisopher A. Palazzola, deceased, brought an action in the Wayne Circuit Court against Karmazin Products Corporation and others, seeking damages resulting from the work-related death of Christopher that occurred when he was overcome by fumes from trichloroethylene while cleaning a water holding tank at Karmazin. The trial court, Diane M. Hathaway, J., granted Karmazin's motion for summary disposition, finding that the plaintiff had not raised a genuine factual issue regarding Karmazin's intent to injure the deceased and therefore the intentional tort exception to the exclusive remedy provided in the Worker's Disability Compensation Act, MCL 418.131(1); MSA 17.237(131)(1), did not apply. The plaintiff appealed.

The Court of Appeals *held*:

1. The plaintiff did not allege sufficient facts to bring this action within the intentional tort exception. The evidence does not support an inference that Karmazin acted with an intent to injure or had actual knowledge of an injury certain to occur and wilfully disregarded this knowledge.

2. The Legislature intended that actions falling within the intentional tort exception encompass only those in which an employer acts with a specific purpose to injure an employee. An employer must have made a conscious choice to injure an employee and have deliberately acted or failed to act in furtherance of that intent. The employer's intent to injure may be inferred if the employer had actual knowledge that an injury was certain to occur, under circumstances indicating deliberate disregard of that knowledge.

3. To establish an employer's intent to injure, a plaintiff must establish a deliberate act, which includes both acts and omissions and encompasses situations in which the employer consciously fails to act, and that the employer specifically intended an injury, i.e., the employer must have had a conscious purpose to bring about specific consequences. When the employer is a corporation, a particular employee must possess the requisite state of mind in

order for the plaintiff to prove an intentional tort on the part of the employer.

4. A plaintiff alternatively can prove intent to injure by establishing actual knowledge on the part of the employer that an injury was certain to occur and that the employer wilfully disregarded that knowledge. Actual knowledge precludes liability based upon implied, imputed, or constructive knowledge. Actual knowledge for a corporate employer can be established by showing that a supervisory or managerial employee had actual knowledge that an injury would follow from what the employer deliberately did or did not do. The requirement that the employer had actual knowledge of an injury certain to occur establishes an extremely high standard of proof that cannot be met by reliance on the laws of probability, the mere prior occurrence of a similar event, or conclusory statements of experts. An employer's awareness that a dangerous condition exists is not enough. Instead, the employer must be aware that injury is certain to result from what the actor does. The wilful disregard element requires proof that an employer's act or failure to act was more than mere negligence, e.g., failing to protect someone from a foreseeable harm. Instead, an employer must, in fact, disregard actual knowledge that an injury is certain to occur.

5. A party may not raise an issue of fact by submitting an affidavit that contradicts the party's prior clear and unequivocal testimony. This rule is equally applicable to nonparty witnesses.

Affirmed.

1. WORKER'S COMPENSATION — INTENTIONAL TORT EXCEPTION.

An employee's exclusive remedy for a work-related personal injury or occupational disease is the recovery permitted under the Worker's Disability Compensation Act, except where an employer commits an intentional tort; an intentional tort exists only when an employee is injured as a result of a deliberate act of the employer and the employer specifically intended an injury; a "deliberate act" encompasses both commissions and omissions and includes a situation in which an employer consciously fails to act; "specifically intended an injury" means an employer must have had a conscious purpose to bring about specific consequences; where the employer is a corporation, a particular employee must possess the requisite state of mind in order for the plaintiff to prove an intentional tort on the part of the employer (MCL 418.131[1]; MSA 17.237[131][1]).

2. WORKER'S COMPENSATION — INTENTIONAL TORT EXCEPTION.

The second sentence of the intentional tort exception to the exclusive remedy permitted under the Worker's Disability Compensation Act allows an employer's intent to injure to be inferred if the employer

had actual knowledge that an injury was certain to occur, under circumstances indicating deliberate disregard of that knowledge; the "actual knowledge" element precludes liability based on implied, imputed, or constructive knowledge; actual knowledge for a corporate employer can be established by showing that a supervisory or managerial employee had actual knowledge that an injury would follow from what the employer deliberately did or did not do; the "injury certain to occur" element establishes an extremely high standard of proof that cannot be met by reliance on the laws of probability, the mere prior occurrence of a similar event, or conclusory statements of experts; an employer's awareness that a dangerous condition exists is not enough, rather it must be aware that injury is certain to result from what the actor does; the "willfully disregard" element requires proof that an employer's act or failure to act must be more than mere negligence, e.g., failing to protect someone from a foreseeable harm; the employer must in fact disregard actual knowledge that an injury is certain to occur (MCL 418.131[1]; MSA 17.237[131][1]).

3. TRIAL — WITNESSES — NONPARTY WITNESSES — AFFIDAVITS.
> The rule that a party may not raise an issue of fact by submitting an affidavit that contradicts the party's prior clear and unequivocal testimony applies equally to nonparty witnesses.

*Lopatin, Miller, Freedman, Bluestone, Herskovic & Heilmann* (by *Richard E. Shaw*), for the plaintiff.

*Sommers, Schwartz, Silver & Schwartz, P.C.* (by *C. F. Boyle, Jr.*, and *Patrick Burkett*), for Karmazin Products Corporation.

Before: YOUNG, P.J., and HOLBROOK, JR., and J. R. ERNST*, JJ.

YOUNG, P.J. This case involves the tragic work-related death of Christopher Palazzola on July 16, 1992. Plaintiff, as personal representative of the estate of Christopher Palazzola, brought suit against defendant Karmazin Products Corporation, Palazzola's employer, seeking to apply the intentional tort excep-

---

* Circuit judge, sitting on the Court of Appeals by assignment.

tion to the exclusive remedy provided in the Worker's Disability Compensation Act (the act), MCL 418.131(1); MSA 17.237(131)(1).[1] The trial court granted defendant's motion for summary disposition pursuant to MCR 2.116(C)(10), reasoning that plaintiff had not raised a genuine factual issue regarding defendant's intent to injure and therefore the intentional tort exception to the exclusive remedy provided in the act did not apply. Plaintiff appeals as of right from this ruling. We affirm.

I

Defendant is in the business of manufacturing radiators. Trichloroethylene (TCE) is an agent used in a degreasing system that cleans radiator parts. As plaintiff acknowledges, in its liquid state, TCE apparently can be handled with relative safety and defendant's employees had submerged their hands in liquid TCE without adverse effect. However, TCE evaporates readily at room temperature and, in its gaseous state, can be harmful or fatal if ingested or inhaled. Defendant's degreaser operation is served by a cooling system consisting of a water holding tank located below

---

[1] This section provides:

> The right to the recovery of benefits as provided in this act shall be the employee's exclusive remedy against the employer for a personal injury or occupational disease. The only exception to this exclusive remedy is an intentional tort. An intentional tort shall exist only when an employee is injured as a result of a deliberate act of the employer and the employer specifically intended an injury. An employer shall be deemed to have intended to injure if the employer had actual knowledge that an injury was certain to occur and willfully disregarded that knowledge. The issue of whether an act was an intentional tort shall be a question of law for the court. This subsection shall not enlarge or reduce rights under law.

ground level that measures four feet wide by eight feet long by six and a half feet high.

On July 16, 1992, defendant had temporarily suspended its operations for summer maintenance. The plant's manager of manufacturing and engineering, Kenneth McIver, directed that the water holding tank be drained and refilled with clean water. Maintenance crew leader, Joe Kucmienski, led a team of maintenance workers, including Christopher Palazzola, to accomplish this task.

The crew drained the tank and, upon doing so, discovered sludge in the bottom of the tank. Kucmienski testified that he had not expected to find sludge and that *he* decided to remove the sludge before refilling the tank because this seemed the "logical" thing to do.[2] He directed a crew member, Michael Czerwonka, to begin this process. Czerwonka entered the tank and filled three buckets with sludge, which buckets had to be pulled out of the tank by rope. Following this, Kucmienski directed Palazzola to relieve Czerwonka. Czerwonka got out of the tank and Palazzola entered it.

Czerwonka testified that, upon getting out, he did not immediately express to anyone, including Kucmienski, any physical distress as a result of being in the tank. Czerwonka further testified in his deposition that, before he entered the tank, he could smell the fumes but "it wasn't so bad" and that the fumes "weren't that strong at all." He also testified that,

---

[2] McIver testified in his deposition that he merely had directed that the tank be drained and refilled and did not anticipate that anyone would be required to enter the tank in order to accomplish this assignment. Kucmienski testified that he had no appreciation when the sludge was discovered that it contained TCE or that removing the sludge was hazardous.

when he got out of the tank, he realized that he was "nauseous and extremely light-headed," but did not disclose this fact to anyone for a minute or two. At that point, Czerwonka told co-worker Dale Burzycki, "[t]hose fumes are strong now." Burzycki immediately informed Kucmienski who, in turn, ordered Palazzola out of the tank. Czerwonka testified that, at the time he informed Burzycki about the strength of the fumes, Palazzola had been in the tank for a "minute or two at tops."

Unfortunately, by that point, Palazzola had become overwhelmed and was collapsing in the tank. Kucmienski entered the tank in an attempt to rescue Palazzola and he too was overcome. An effort to rescue both men ensued, wherein fire and police personnel were contacted. Kucmienski and Palazzola were not removed from the tank for another 1½ hours. Although Kucmienski survived, Palazzola died as a result of his exposure.

II

On appeal, plaintiff argues that defendant's knowledge of the danger was foreseeable and that its decision to expose its employees to the TCE fumes in the holding tank falls within the intentional tort exception of the act. After plaintiff appealed to this Court, our Supreme Court issued *Travis v Dreis & Krump Mfg Co*, 453 Mich 149; 551 NW2d 132 (1996), construing the act's intentional tort exception and outlining the proofs necessary to qualify under the exception.

Although the determination whether the facts alleged by the plaintiff are true is one for the trier of fact, it is a question for the court to determine whether the facts alleged are sufficient to constitute

an intentional tort within the meaning of the act. *Zuke v Fritz Enterprises, Inc*, 202 Mich App 572, 576; 509 NW2d 787 (1993). Therefore, on the basis of the Supreme Court's construction of the intentional tort exception in *Travis, supra,* we must determine whether plaintiff has alleged sufficient facts to bring his action within the intentional tort exception to the exclusive remedy of the act.

### III

The disability benefits provided under the act are the exclusive remedy for work-related injuries. MCL 418.131(1); MSA 17.237(131)(1). In 1986, although the statutory language contained no exception to this exclusive remedy, the Supreme Court in *Beauchamp v Dow Chemical Co*, 427 Mich 1; 398 NW2d 882 (1986), recognized an intentional tort exception, reasoning that while accidental injuries were a matter of course in industry, intentional injuries were not. *Id.* at 16. *Beauchamp* further held that an employer could be held liable for an intentional tort if injury was "substantially certain" to occur from the employer's actions. *Id.* at 21-22.

Shortly after *Beauchamp*, the Legislature enacted the "intentional tort exception" to the exclusive remedy of the act:

> The only exception to this exclusive remedy is an intentional tort. An intentional tort shall exist only when an employee is injured as a result of a deliberate act of the employer and the employer specifically intended an injury. An employer shall be deemed to have intended to injure if the employer had actual knowledge that an injury was certain to occur and willfully disregarded that knowledge. The issue of whether an act was an intentional tort shall be a

question of law for the court. [MCL 418.131(1); MSA 17.237(131)(1).]

As recognized in *Travis, supra,* this provision represents the Legislature's attempt to correct *Beauchamp's* interpretation that the exclusive remedy of the act did not apply when injury was "substantially certain" to result from the employer's actions. *Travis, supra,* at 164-165. In separate opinions, a majority of the Supreme Court's justices agreed in *Travis* that the Legislature intended that actions falling within the intentional tort exception encompassed only those in which an employer acts with a specific purpose to injure an employee.[3] The Court's core holding concerning the construction of this provision was as follows:

> If we read both sentences of the intentional tort exception together, it becomes evident that an employer must have made a conscious choice to injure an employee and have deliberately acted or failed to act in furtherance of that intent. The second sentence then allows the employer's intent to injure to be inferred if the employer had actual knowledge that an injury was certain to occur, under circumstances indicating deliberate disregard of that knowledge. [*Id.* at 180.]

In construing this provision, the lead opinion parsed the various critical phrases in the exception, articulating the elements of proof necessary to establish an employer's intent to injure through either direct or indirect evidence. To paraphrase the *Travis*

---

[3] A majority of the Court, Justices MALLETT, RILEY, BRICKLEY and WEAVER, concurred in the test established in Justice BOYLE's lead opinion. See *Travis, supra* at 191-192.

Court at 169-171, a plaintiff must establish the following elements:

(1) "Deliberate act"—This includes both acts and omissions and encompasses situations in which the employer "consciously fails to act."

(2) "Specifically intended an injury"—An employer must have had a conscious purpose to bring about specific consequences. When an employer is a corporation, a particular employee must possess the requisite state of mind in order to prove an intentional tort.[4] (Recognizing that direct evidence of intent is often unavailable, the *Travis* Court explained that the second sentence of the exception provides an alternative means of proving an employer's intent to injure. *Id.* at 172-173. Plaintiff here relies upon this alternative to establish the employer's intent. To paraphrase the *Travis* Court at 173-174, 176, 178-179, a plaintiff alternatively can prove intent to injure by establishing the following elements:

(1) "Actual Knowledge"—This element of proof precludes liability based upon implied, imputed, or constructive knowledge. Actual knowledge for a corporate employer can be established by showing that a supervisory or managerial employee had "actual knowledge that an injury would follow from what the employer deliberately did or did not do."

(2) "Injury certain to occur"—This element establishes an "extremely high standard" of proof that cannot be met by reliance on the laws of probability, the mere prior occurrence of a similar event, or con-

---

[4] The *Travis* Court emphasized that "[t]he intent requirement will not be fulfilled by presenting 'disconnected facts possessed by various employees or agents of that corporation . . . .'" *Id.* at 171-172, quoting *Adams v Nat'l Bank of Detroit*, 444 Mich 329, 369; 508 NW2d 464 (1993).

clusory statements of experts. Further, an employer's awareness that a dangerous condition exists is not enough. Instead, an employer must be aware that injury is certain to result from what the actor does.

(3) "Willfully disregard"—This element requires proof that an employer's act or failure to act must be more than mere negligence, e.g., failing to protect someone from a foreseeable harm. Instead, an employer must, in fact, disregard actual knowledge that an injury is *certain* to occur.

With these principles of proof in mind, we review whether the trial court properly granted Karmazin's motion for summary disposition.

IV

The trial court concluded that no genuine issue of material fact existed regarding whether Karmazin's agents had "actual knowledge that injury was certain to occur."

This Court reviews a motion for summary disposition de novo. *Stehlik v Johnson (On Rehearing)*, 206 Mich App 83, 85; 520 NW2d 633 (1994). A motion for summary disposition pursuant to MCR 2.116(C)(10) tests the factual basis underlying a plaintiff's claim. *Radtke v Everett*, 442 Mich 368, 374; 501 NW2d 155 (1993). MCR 2.116(C)(10) permits summary disposition when "[e]xcept as to the amount of damages, there is no genuine issue as to any material fact, and the moving party is entitled to judgment or partial judgment as a matter of law." *Id*. A court reviewing such a motion, therefore, must consider the pleadings, affidavits, depositions, admissions, and any other evidence in favor of the party opposing the motion, granting that party the benefit of any reason-

able doubt, and determine whether there is a genuine issue of disputed fact. *Id.*

Applying the *Travis* Court's construction of the intentional tort exception of the act to the facts of this case, we conclude that plaintiff failed to establish, either through direct or circumstantial proof, that Karmazin's actions constitute an intentional tort. Plaintiff primarily contends that the evidence establishes that Karmazin repeatedly disregarded warnings that its workers' safety was in danger, and that plaintiff's decedent died as a result of Karmazin's continuing failure to advise employees of workplace danger as well as failure to provide appropriate safety equipment. Assuming arguendo that plaintiff's evidence establishes a deliberate act, i.e., a conscious failure to act, *Travis, supra* at 170, plaintiff's evidence does not support an inference that Karmazin acted with an intent to injure. Inasmuch as plaintiff asserts his claim under the second sentence of the exception, plaintiff has not established that defendant had "actual knowledge" of an "injury certain to occur" and that defendant "willfully disregarded" this knowledge.

### A. MIOSHA REPORT

Plaintiff argues that the factors that led to Palazzola's death resulted from Karmazin's repeated failure to protect its employees from the known dangers of TCE. Plaintiff produced a MIOSHA (Michigan Occupational Safety and Health Act, MCL 408.1001 *et seq.*; MSA 17.50[1] *et seq.*) report from Michigan's Bureau of Environmental and Occupational Health regarding Karmazin's past violations of worker-safety regulations. The report, which was prepared after Palazzola's death, indicated that Karmazin provided insuffi-

cient training and protection for workers asked to work in confined spaces. Plaintiff points out that the MIOSHA investigator found that Karmazin's violation of these regulations was "wilful," and that Karmazin also received a citation for safety violations after a worker nearly died from an entirely unrelated accident involving the inhalation of nitrogen gas in 1991. Plaintiff argues that this proves that Karmazin repeatedly disregarded warning signs that it was endangering its workers' safety in confined-space work assignments.

The reports by themselves, however, do not prove that a particular supervisory or managerial employee, who was also involved in the events on July 16, 1992, had actual knowledge of the danger of certain injury. As *Travis* instructs, liability cannot be premised upon constructive, imputed, or implied knowledge. *Id.* at 173. Moreover, conclusory statements by experts are insufficient to allege the certainty of injury contemplated by the Legislature. *Id.* at 174. Instead, to impute an intent to injure to the employer, a plaintiff is required to show that a particular employee of the defendant possessed knowledge of facts from which it could be concluded that this employee had the requisite intent to injure. *McNees v Cedar Springs Stamping Co (After Remand)*, 219 Mich App 217, 223; 555 NW2d 481 (1996).

### B. McIVER

Nevertheless, plaintiff contends that McIver, manager of manufacturing and engineering, had knowledge of the information in the MIOSHA report. Plaintiff argues that, with this knowledge, McIver had the responsibility to properly instruct Kucmienski and his crew how to clean the holding tank by providing

required safety information and equipment. Plaintiff specifically alleges that McIver neither advised Kucmienski regarding the dangers of gaseous TCE nor instructed Kucmienski to test the air in the holding tank or provide workers with safety equipment.

However, plaintiff has not provided evidence that disputes the fact that McIver only directed the crew to drain and fill the tank, and that his instructions regarding the disposing of the tank water into barrels were consistent with that assignment. In his deposition, McIver testified that he neither had ordered cleaning *inside* the tank nor contemplated that the crew would enter the tank to clean it. As attested to by Kucmienski and other witnesses, the decision to clean the tank was made on the spot by Kucmienski. Thus, plaintiff has not shown that the alleged failure to test the air or provide respirators to crew members assigned to clean the tank resulted from *McIver's* actual knowledge that certain injury would occur in the water holding tank.

## C. KUCMIENSKI

Plaintiff alternatively contends that Kucmienski had "actual knowledge." Specifically, plaintiff alleges that Kucmienski was aware of the dangers of TCE, knew that it contaminated the water in the holding tank, and ordered crew members to clean the sludge despite their hesitation because of the strong smell of TCE. Because Kucmienski was not a supervisory or managerial employee,[5] his knowledge could not be

---

[5] McIver testified in his deposition that Kucmienski was an hourly maintenance employee, who had responsibility for leading maintenance crew members through assigned tasks and, although he assigned work to his crew, he had no authority to hire, fire, or discipline employees.

attributed to his corporate employer, Karmazin. *Travis, supra* at 173.

However, even if Kucmienski's knowledge and actions could be imputed to his employer, plaintiff has not established that Kucmienski had actual knowledge of certain injury. Assuming as true plaintiff's allegation that Kucmienski generally knew about the dangers of TCE and knew of its presence in the holding tank's water, those two facts do not establish knowledge of injury certain to occur. In his deposition, Kucmienski testified that he did not appreciate the danger of gaseous TCE in the holding tank. Further, his testimony is buttressed by evidence that he willingly entered the holding tank in an attempt to retrieve Palazzola.[6]

Plaintiff next attempts to demonstrate that Kucmienski disregarded actual knowledge of certain danger by submitting evidence that he ordered both Czerwonka and Palazzola to go into the tank and remove the sludge despite their protests regarding the TCE fumes. To support this theory, plaintiff submitted an affidavit by Czerwonka that suggests that Czerwonka had directly confronted Kucmienski about the dangers of the tank-cleaning operation before an injury occurred. This affidavit was obtained after Czerwonka's deposition and contradicts his clear and

---

[6] The trial court observed that Kucmienski's willingness to enter the tank and attempt to retrieve Palazzola clearly indicates that he did not know of the danger. Plaintiff suggests that this fact should be disregarded in determining whether Kucmienski had prior knowledge of the danger because Kucmienski should have known of the risk of injury inside the holding tank. Although plaintiff makes a valid argument that a person's subsequent act may not conclusively negate the existence of prior knowledge, we still reject plaintiff's argument. As *Travis* instructs, it is not "sufficient to allege that the employer should have known, or had reason to believe, that injury was certain to occur." *Travis, supra* at 173.

unequivocal deposition testimony that the fumes were not that strong and that he first realized the adverse effects of the fumes about two minutes after leaving the holding tank. It is well settled that a party may not raise an issue of fact by submitting an affidavit that contradicts the party's prior clear and unequivocal testimony. *Gamet v Jenks*, 38 Mich App 719, 726; 197 NW2d 160 (1972). This Court has also held that the rule is equally applicable to nonparty witnesses. *Kaufman & Payton, PC v Nikkila*, 200 Mich App 250, 257; 503 NW2d 728 (1993). Consequently, Czerwonka's affidavit does not create a genuine issue of disputed material fact.

Similarly, plaintiff has alleged that Palazzola entered the tank and reemerged, advising Kucmienski that he did not want to go back down. Plaintiff further alleged that Kucmienski, despite Palazzola's protest, ordered Palazzola back into the holding tank on pain of discharge. Plaintiff's basis for these allegations is the deposition testimony of Jerry Pitts. Pitts neither witnessed these events nor was he an employee of the company at the time of the incident. Pitts' "testimony" is based upon alleged conversations with two employees who were present, Michael Stein and Dale Burzycki. Both Stein and Burzycki have denied telling Pitts that Palazzola refused to enter the tank or that Kucmienski ordered him to do so or be fired. Irrespective of the denials, Pitts' deposition testimony is inadmissible double hearsay and was properly disregarded by the trial court. See *SSC Associates Ltd Partnership v General Retirement System of the City of Detroit*, 192 Mich App 360, 364; 480 NW2d 275 (1991) ("Opinions, conclusionary denials, unsworn averments, and inadmissible hearsay do not

satisfy the court rule; disputed fact [or the lack of it] must be established by admissible evidence.").[7]

After reviewing the entire record, we have found no corroboration for Pitts' or Czerwonka's allegations in the record and all other witnesses deposed denied that any crew member expressed concern or protested regarding the procedure of entering the tank to clean the sludge. Thus, plaintiff has failed to establish that Kucmienski had the requisite knowledge of certain injury.

### D. ABSENCE OF PRIOR INCIDENTS

As stated above, the record establishes that defendant had no prior knowledge that employees would enter the holding tank to clean remaining sludge, or even that the tank, when drained, would contain sludge. Further, although plaintiff alludes to a prior incident involving a worker poisoned by the inhalation of nitrogen gas in a confined space, that incident did not involve TCE or maintenance of the holding tank at issue in this case.

Rather, the lethal agent in question in this case had been handled by employees in the past in its liquid form. Plaintiff contends that there is some evidence that workers exposed to the pit area where the hold-

---

[7] Plaintiff argues without citation of authority that Pitts' testimony was admissible because he was relaying statements from defendant's employees that were admissible in and of themselves. Because plaintiff fails to cite authority in support of this proposition, he effectively has abandoned this issue. The appellant may not merely announce his position and leave it to this Court to discover and rationalize the basis for his claims, *Mitcham v Detroit*, 355 Mich 182, 203; 94 NW2d 388 (1959); *Sargent v Browning-Ferris Industries*, 167 Mich App 29, 32-33; 421 NW2d 563 (1988), nor may he give issues cursory treatment with little or no citation of supporting authority, *Goolsby v Detroit*, 419 Mich 651, 655, n 1; 358 NW2d 856 (1984); *Community Nat'l Bank of Pontiac v Michigan Basic Property Ins Ass'n*, 159 Mich App 510, 520-521; 407 NW2d 31 (1987).

ing tank is located had also been exposed to TCE. However, there is no evidence that an employee was assigned to work in a confined space with exposure to TCE. Czerwonka, the first employee who experienced adverse contact with the TCE fumes in the holding tank, testified in his deposition that (1) the fumes were not "that strong" and (2) he did not alert anyone about the potency of the fumes or the effect of the fumes on him until several minutes had elapsed after he had gotten out of the tank and Palazzola had entered it.

At best, this evidence supports a conclusion that it was foreseeable that working in the holding tank might be dangerous to the defendant's employees. As stated by our Supreme Court, mere negligence in failing "to act to protect a person who might foreseeably be injured from an appreciable risk of harm" does not satisfy the intentional tort exception of the act. *Travis, supra* at 178-179. Significantly, this case bears none of the characteristics of egregious employer conduct found in cases relied upon by the plaintiff in which this Court held there were disputed facts regarding whether the employer's conduct fell within the intentional tort exception.[8]

---

[8] See, e.g., *Adams v Shepherd Products, US, Inc,* 187 Mich App 695; 468 NW2d 332 (1991). In *Adams,* the employer removed the blade guard on a circular saw, taped the on/off switch to the "on" position, and failed to warn employees of these modifications even though employees were required to reach into the area of the unprotected blade that they could not see. *Id.* at 697-698; contrast *Oaks v Twin City Foods, Inc,* 198 Mich App 296, 298; 497 NW2d 196 (1993) (questioning *Adams*).

Rather, the facts in this case are more akin to *Glockzin v Nortek, Inc,* 815 F Supp 1050 (WD Mich, 1992), which the *Travis* lead opinion cited with approval. See *Travis, supra* at 176. *Glockzin* involved the electrocution of an employee by a machine that only had caused prior minor shocks. *Glockzin, supra* at 1053. Similarly, in this case, there were no comparable prior incidents with the holding tank in question. Accordingly,

V. CONCLUSION

In summary, the evidence indicates that after the unanticipated discovery of sludge in the holding tank, Kucmienski, Palazzola's coemployee, instigated a project to clean the sludge, and assigned Czerwonka and Palazzola to this task. As soon as Kucmienski learned that Czerwonka was suffering ill effects from TCE-vapor exposure, he attempted to get Palazzola out of the tank, even risking injury to himself in an attempt. to save Palazzola. After both men became disabled by the fumes, rescue efforts were immediately commenced by other coemployees and emergency personnel. From these facts, we conclude that this tragedy was not the result of actions falling within the intentional tort exception as construed in *Travis*. Accordingly, we hold that the trial court properly found that plaintiff failed to create a genuine issue of material fact concerning defendant's intent under the intentional tort exception and is bound, therefore, by the exclusive remedy provision of the act.

Affirmed. Defendant, being the prevailing party, may tax costs pursuant to MCR 7.219.

---

this case does not involve "a continuously operative dangerous condition" that the employer knows will cause an injury "yet refrains from informing the employee about . . . so that he is unable to take steps to keep from being injured . . . ." *Travis, supra* at 178.