# STATE OF MICHIGAN

# COURT OF APPEALS

COLBY SMITH,

Plaintiff-Appellee,

v

MICHIGAN PALLET, INC., JONATHAN J.
POORTENGA, and KENNETH ENGELSMA,

Defendants-Appellants,

and

LPS EQUIPMENT & ACQUISITION
COMPANY, INC., ADRIAN ROCSKAY, TODD
STRONG, JAMES KIVELL, and JOHN DOE,

Defendants.

UNPUBLISHED
June 2, 2015

No. 318702
Lenawee Circuit Court
LC No. 11-004180-NO

Before: CAVANAGH, P.J., and METER and SHAPIRO, JJ.

PER CURIAM.

Appellants appeal by leave granted from the trial court's order denying their motion for summary disposition under MCR 2.116(C)(4) (lack of subject-matter jurisdiction) and (C)(10) (no genuine issue of material fact) in this action seeking relief outside the Worker's Disability Compensation Act (WDCA), MCL 418.101 *et seq.* We affirm.

## I. FACTUAL BACKGROUND

Appellee began working for appellant Michigan Pallet, Inc., part time in June 2009. A month later he was moved to full-time employment. Appellee's immediate supervisor was appellant Jonathan Poortenga. Appellant Kenneth Engelsma was Poortenga's superior. Part of appellee's responsibilities included operating a Whirlwind jump saw. A jump saw is a pneumatically powered piece of equipment. When not activated, the blade is enclosed in a lower table-guard section. When activated with a foot pedal, the blade swings or "jumps" up through the blade opening. First, however, a hood that sits over the blade opening moves down and holds the wood in place while simultaneously acting as a guard. Poortenga testified that the hood was high enough for four inches of material to fit underneath. The implication is that if material less

-1-

than four inches high is being cut it would still be possible for an operator's hand to be under the hood and in range of the saw's blade.

The Michigan Occupational Safety and Health Administration (MIOSHA) conducted a safety inspection of Michigan Pallet's facilities on June 1 and 8, 2009, before appellee's move to full-time employment. MIOSHA determined that the Whirlwind jump saw needed additional safety features because it did not entirely prevent the operator from accessing the blade when activated. Poortenga implemented a two-hand safety mechanism for the saw. The device required the operator to push two buttons before the foot pedal could be used to activate the blade. However, Poortenga admitted that employees had been taping down the switches. Poortenga testified that he removed the tape both times he saw it on the safety device and issued verbal warnings to all employees to not tape down the switches. Engelsma admitted that he had had multiple discussions with Poortenga about the taping down of the switches but that he did not know if "anything else [was] done" aside from Poortenga's alleged verbal warnings.

Significantly, a reading of appellee's deposition testimony as a whole indicates that when Poortenga trained appellee on the jump saw he did so with the switches taped down and with his hands on the board to be cut. On September 18, 2009, appellee was assigned to operate the jump saw. He testified that he was having trouble with one of the boards he was attempting to cut and while struggling with the board the saw activated and cut off his hand. Appellee claimed that his foot was not on the pedal and that the saw malfunctioned. Appellee then brought this suit against appellants as well as the saw's manufacturers and the MIOSHA safety inspectors. Appellee claimed that appellants did not ensure that the safety mechanism was operating properly and that their failure to do so was an intentional tort that caused his injury and satisfied the intentional tort exception to obtain relief outside of the WDCA. After appellants moved for summary disposition, the trial court held that there was a genuine factual issue regarding whether appellants' actions satisfied the intentional tort exception.

## II. STANDARD OF REVIEW

"[Q]uestions regarding the exclusive remedy provision of the WDCA" are reviewed pursuant to MCR 2.116(C)(4). *Herbolshemer v SMS Holding Co*, 239 Mich App 236, 240; 608 NW2d 487 (2000). This Court reviews de novo a trial court's decision regarding a motion for summary disposition under MCR 2.116(C)(4). *Herbolshemer*, 239 Mich App at 240. We consider "whether the affidavits and other proofs show that there was no genuine issue of material fact" and whether the moving party was entitled to judgment as a matter of law. *Id*.

A motion for summary disposition under MCR 2.116(C)(10) is also reviewed de novo. *Maiden v Rozwood*, 461 Mich 109, 118-120; 597 NW2d 817 (1999). "In evaluating a motion for summary disposition brought under [MCR 2.116(C)(10)], a trial court considers affidavits, pleadings, depositions, admissions and other evidence . . . in the light most favorable to the party opposing the motion." *Maiden*, 461 Mich at 120. The moving party is entitled to judgment as a matter of law when there is no genuine issue regarding any material fact. *Id*.

III. ANALYSIS

The WDCA provides, in part:

> The right to the recovery of benefits as provided in this act shall be the employee's exclusive remedy against the employer for a personal injury or occupational disease. The only exception to this exclusive remedy is an intentional tort. An intentional tort shall exist only when an employee is injured as a result of a deliberate act of the employer and the employer specifically intended an injury. An employer shall be deemed to have intended to injure if the employer had actual knowledge that an injury was certain to occur and willfully disregarded that knowledge. The issue of whether an act was an intentional tort shall be a question of law for the court. This subsection shall not enlarge or reduce rights under law. [MCL 418.131(1).]

In order to show that an intentional tort occurred, a plaintiff must show: (1) a deliberate act or omission and (2) a specific intent to injure. *Palazzola v Karmazin Prods Corp*, 223 Mich App 141, 149; 565 NW2d 868 (1997). In the absence of direct evidence of specific intent, a plaintiff can satisfy the second prong by showing:

> (1) "Actual Knowledge"—This element of proof precludes liability based upon implied, imputed, or constructive knowledge. Actual knowledge for a corporate employer can be established by showing that a supervisory or managerial employee had "actual knowledge that an injury would follow from what the employer deliberately did or did not do."

> (2) "Injury certain to occur"—This element establishes an extremely high standard of proof that cannot be met by reliance on the laws of probability, the mere prior occurrence of a similar event, or conclusory statements of experts. Further, an employer's awareness that a dangerous condition exists is not enough. Instead, an employer must be aware that injury is certain to result from what the actor does.

> (3) "Willfully disregard"—This element requires proof that an employer's act or failure to act must be more than mere negligence, e.g., failing to protect someone from a foreseeable harm. Instead, an employer must, in fact, disregard actual knowledge that an injury is *certain* to occur. [*Id*. at 149-150 (citation and quotation marks omitted).]

Appellants also moved for summary disposition under MCR 2.116(C)(10) with respect to appellee's claim for intentional infliction of emotional distress (IIED).[1] This claim is also subject to the exclusive remedy provision of the WDCA. See MCL 418.131(1).

---

[1] Appellee raised counts of "intentional tort" and IIED.

## A.  DELIBERATE ACT OR OMISSION

The Supreme Court has interpreted the deliberate act requirement in MCL 418.131(1) to "encompass both commissions and omissions." *Travis v Dreis & Krump Mfg Co*, 453 Mich 149, 169; 551 NW2d 132 (1996) (opinion of BOYLE, J.).[2]  An employer's conscious failure to act is sufficient to satisfy the deliberate act requirement. *Palazzola*, 223 Mich App at 149.  When the injury is the result of the injured party's "momentary and tragic lapse in judgment, not the result of an intentional act by [the] defendant," the intentional tort exception is inapplicable. *Herman v Detroit*, 261 Mich App 141, 150; 680 NW2d 71 (2004).

Appellants have argued that their alleged failure to ensure that the safety device was operating was not the cause of appellee's injury, but that appellee's injury was caused by either his lapse in judgment or by the saw's malfunction.  It is true that even absent the safety features, appellee knew where the blade opening was and knew that there was never any reason to place his hand over the blade opening.  Therefore, appellee's lapse in judgment can be said to be one "but for" cause of his injury.  In addition, appellee testified that his foot was not on the pedal when the saw activated.  As such, a malfunction in the how the saw operated could also be said to be a "but for" cause of his injury.  However, had the safety device that MIOSHA required appellants to install been operating properly, the saw would not have been able to activate with appellee's hand over the blade opening.  We conclude that while appellants' alleged failure to ensure that the safety device was working properly was not the sole "but for" cause of appellee's injury, it was *a* "but for" cause of his injury.  Therefore, the requirement for a deliberate act or omission has been met.

## B.  SPECIFIC INTENT TO INJURE

### 1.  ACTUAL KNOWLEDGE

The Legislature's use of the "term 'actual knowledge,' and not the less specific word 'knowledge,'" means that "constructive, implied, or imputed knowledge is not enough." *Travis*, 453 Mich at 173.  In *Travis*, the Court determined that the evidence, viewed in the light most favorable to the plaintiff, showed that the defendant, through its supervisory employee, had "actual knowledge" that a press machine was malfunctioning because it was double cycling. *Id*. at 181.  We note that there is no requirement for the plaintiff to show that the defendant knew an injury would occur in a specific way or on a specific date. *Johnson v Detroit Edison Co*, 288 Mich App 688, 699; 795 NW2d 161 (2010).  In *Johnson, id*. at 699-700, the defendants' managers had been told that a boiler was in disrepair and the disrepair was "causing a buildup of

---

[2] Justice Mallet concurred with the lead opinion of Justice Boyle. *Travis*, 453 Mich at 191. Justices Riley, Brickley, and Weaver agreed with the test established by the lead opinion for establishing whether an intentional tort was committed, but disagreed with the application of that test to the facts of the companion case that was consolidated with *Travis* on appeal. *Id.* at 191-192.

ash that would explode." This Court concluded that that knowledge satisfied the actual knowledge prong. *Id*. at 700.

Viewing the facts in the light most favorable to appellee in the case at hand, it appears that appellants clearly knew that the safety system was being bypassed by the employees and that insufficient measures had been undertaken to address this. Appellants also knew that when the safety system was bypassed, the jump saw was not meeting the safety standards set by MIOSHA.[3] This prong has been satisfied.

## 2. INJURY CERTAIN TO OCCUR

"When an injury is 'certain' to occur, no doubt exists with regard to whether it will occur." *Travis*, 453 Mich at 174. "[T]he laws of probability . . . play no part in determining the certainty of injury." *Id*. Whether an incident has happened before or not is not proof either way of whether an injury is certain to occur. *Id*. Conclusory statements of experts are also insufficient to establish certainty. *Id*. Similarly, it is not enough for an employer to know that a dangerous condition exists; instead, the employer must know that injury is certain to occur from what the employee does. *Id*. at 176. More is required than that "the employer had actual knowledge that an injury was likely to occur at some point during the performance of a given task." *Oaks v Twin City Foods*, 198 Mich App 296, 297; 497 NW2d 196 (1992). "It is not enough that the employer acted recklessly and even envisioned the type of accident that did in fact occur." *Id*. at 298.

In *McNees v Cedar Springs Stamping Co*, 184 Mich App 101, 103; 457 NW2d 68 (1990), the plaintiff argued that the defendant had actual knowledge that an injury was certain to occur by means of a press machine that the defendant had been warned contained a malfunctioning foot pedal. The plaintiff had also contended in that case that he was instructed to work on the press machine and use the foot pedal. *Id*. at 104. This Court found evidence that the defendant was aware of the danger, refused to correct it, violated MIOSHA standards, evidently knew of several near injuries, forced defendant to confront the danger, and destroyed damaging evidence after the plaintiff's injury. *Id*. at 105-106. The Court determined that these alleged facts were sufficient to justify a jury question with regard to the intentional tort exception. *Id*. at 106.[4]

---

[3] Given appellee's testimony that Poortenga held onto the wood when demonstrating to appellee how to use the saw (meaning he could not have had his hands on the safety mechanism), it could even be said that Poortenga had actual knowledge that appellee was trained on the saw without the safety mechanism operating and thus that he had actual knowledge that appellee was operating the saw without the safety mechanism on the day in question.

[4] The Court explained that "the issue whether the facts alleged by plaintiff are sufficient to constitute an intentional tort is a question of law for the court, while the issue whether the facts are as plaintiff alleges is a jury question. If the latter issue were for the court, all jury trials in this type of case would have been eliminated, and we find that this was not the intention of the Legislature." *McNees*, 184 Mich App at 104.

In *Adams v Shepherd Prods, US, Inc*, 187 Mich App 695, 697-698; 468 NW2d 332 (1991), the plaintiff alleged that the defendant had assigned her to operate a circular table saw and that part of her job required reaching under the table where the saw blade was unguarded. This resulted in an accident where the plaintiff lost three fingers on her right hand. *Id*. at 696. The plaintiff further alleged that the saw's on/off switch was taped in the "on" position. *Id*. at 698. The Court, relying in part on *McNees*, stated that if the plaintiff's allegations were true, "then defendant had actual knowledge that an injury was certain to occur . . . ." *Id*.

However, in *Travis*, 473 Mich at 182, the Court found that there was not knowledge that an injury was certain to occur. In that case, the plaintiff had alleged that the defendant knew a press was double cycling. *Id*. at 181. However, the record showed that the press double cycled only intermittently. *Id*. at 182. The record also established that the plaintiff's supervisor was willing to operate the press and had adjusted the machine just before the plaintiff's operation of it. *Id*. Such adjustments had, in the past, allowed the press to avoid double cycling for at least a day. *Id*. Finally, the record showed that while the press did double cycle, it did so slowly and all previous employees had been able to remove their hands in time to avoid an injury. *Id*.

This Court also found that an injury was not certain to occur in *Palazzola*, 223 Mich App at 151. In that case, the decedent had been directed to enter a chemical tank to relieve a fellow employee who had been working in it. *Id*. at 145-146. The first employee who was in the tank came out feeling nauseated and light headed and told a coworker that the fumes were strong. *Id*. at 145-146. Upon the decedent's supervisor's knowledge of the strength of the fumes, he ordered the decedent out of the tank, but the decedent had already collapsed. *Id*. at 146. The supervisor then went into the tank himself to try and remove the decedent, but also "was overcome." *Id*. Emergency crews removed both men; only the supervisor recovered. *Id*. This Court determined that the supervisor did not have actual knowledge that injury was certain to occur. *Id*. at 154. This Court concluded that the supervisor's testimony and his own willingness to go into the tank showed that he did not have knowledge that injury would certainly result from entering the tank. *Id*.

The facts of the present case, viewed in the light most favorable to appellee, are more similar to the cases where the "injury certain to occur" prong was satisfied. Like in *McNees*, appellants in the present case violated MIOSHA standards. Like the *McNees* plaintiff, who was ordered to work on an unsafe machine, appellee was trained to operate the jump saw in an unsafe manner. Also, like the situation in *Adams*, switches were allowed to remain taped down to facilitate the operation of the jump saw, even though this taping down of the switches would cause an operator's hand to come in contact with the saw blade. While it is true that Poortenga was apparently willing to operate the jump saw with the switches taped down (a situation similar to that in *Travis*, where the supervisor operated the press machine that caused the injury), the danger here was not an intermittent danger like in *Travis*. We also find *Palazzola* distinguishable because in that case the plaintiff was ordered into the gas-filled tank *before* the fellow worker mentioned the strong fumes. See *Palazzola*, 223 Mich App at 146.

Here, appellee worked on and was trained to work on an extremely and obviously dangerous piece of equipment (a saw) without using a required safety feature. Given that appellee would be using this saw over and over again during the course of his work, and given the case law discussed above, we find that appellee adequately established the "injury certain to

occur" prong of the intentional tort exception, despite how he, a non-lawyer, may have worded certain answers in his deposition.[5]

### 3. WILLFUL DISREGARD

"[T]he use of the term 'wilfully' . . . is intended to underscore that the employer's act or failure to act must be more than mere negligence, that is, a failure to act to protect a person who might foreseeably be injured from an appreciable risk of harm." *Travis*, 453 Mich at 178-179. In *Travis*, *id*. at 182-183, the Court determined that the defendant did not willfully disregard the harm because the defendant, knowing that previous adjustments had prevented the press from double cycling, adequately addressed the danger by adjusting the press before the plaintiff was assigned to operate it. In *Johnson*, this Court held that the plaintiffs satisfied the "willful disregard" prong because the plaintiffs "presented evidence that defendant failed to remedy the condition that caused plaintiffs' injuries, despite defendant's knowledge of the condition and the opportunity to remedy it . . . ." 288 Mich App at 704. In the present case, the facts, when viewed in the light most favorable to appellee, show that appellants did willfully disregard the fact that the safety system was being bypassed. While Poortenga testified that he issued verbal warnings and removed tape holding down the two safety buttons, appellee testified that the system was bypassed when Poortenga trained him on it. In other words, appellee was shown how to operate the jump saw by bypassing the safety system; the dangerous condition was given tacit approval.

Appellee has adequately established a prima facie case of an intentional tort falling within the exception to the WDCA.

### C. INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

To establish a claim for IIED, a plaintiff must establish the following four elements: "(1) extreme and outrageous conduct, (2) intent or recklessness, (3) causation, and (4) severe emotional distress." *Bhama v Bhama*, 169 Mich App 73, 77; 425 NW2d 733 (1988). "The threshold for showing extreme and outrageous conduct is high." *VanVorous v Burmeister*, 262 Mich App 467, 481; 687 NW2d 132 (2004), overruling in part on other grounds recognized by *Brown v Lewis*, 779 F3d 401 (CA 6, 2015). The conduct must be "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *VanVorous*, 262 Mich App at 481-482 (citations and quotation marks omitted). "It has been said that [an IIED] case is generally one in which the recitation of the facts to an average member of the community would arouse his

---

[5] Appellants argue that appellee destroyed his own lawsuit by stating, for example, that appellants simply "knew [the saw] wasn't as safe as it could have been." Appellants argue that appellee essentially admitted that injury was not certain to occur. We emphasize, however, that appellee is not a lawyer and was not charged at his deposition with reading and applying analogous case law to the present situation.

resentment against the actor, and lead him to exclaim, 'Outrageous!'" *Doe v Mills*, 212 Mich App 73, 91; 536 NW2d 824 (1995).

Given our conclusion that appellee has sufficiently demonstrated that he was forced to work on a machine that appellants had actual knowledge would cause him injury, appellee has demonstrated extreme and outrageous conduct. In addition, the "intent or recklessness" and "causation" requirements are satisfied, given appellee's testimony that the safety feature was being bypassed and that, in fact, he was trained to use the saw without the safety feature. As for the "severe emotional distress" requirement, appellee testified to having nightmares and flashbacks and "freak[ing] out." This Court has determined that a plaintiff's testimony of emotional injury is sufficient to establish this prong. *Haverbush v Powelson*, 217 Mich App 228, 235-236; 551 NW2d 206 (1996). Appellee has established a prima facie case of IIED.

Affirmed and remanded for further proceedings consistent with this opinion. We do not retain jurisdiction.

/s/ /Mark J. Cavanagh
/s/ Patrick M. Meter
/s/ Douglas B. Shapiro