*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

MICHAEL BAY, SR., Personal Representative of
the ESTATE OF MICHAEL BAY, JR.,

UNPUBLISHED
March 9, 2023

Plaintiff-Appellant,

and

KRISTIN BAY and SHELBY BUNGE,

Plaintiffs,

v

No. 360648
Monroe Circuit Court
LC No. 2020-143144-NO

ERIE TECHNOLOGIES, ERIE TECHNOLOGIES,
INC., and F&B TECHNOLOGIES, INC.,

Defendants-Appellees,

and

MARK A. BAUMAN,

Defendant.

Before: RICK, P.J., and M. J. KELLY and RIORDAN, JJ.

PER CURIAM.

In this wrongful death action, plaintiff, as personal representative of decedent's estate, appeals as of right the order granting defendants' motion for summary disposition under MCR 2.116(C)(10) (no genuine issue of material fact).[1] Plaintiff contends on appeal that the trial court

---

[1] Decedent's mother, Kristin Bay, and decedent's sister, Shelby Bunge, were originally named as plaintiffs in the complaint. However, they were both dropped from the case when plaintiff filed

-1-

erred by concluding that there was no genuine issue of material fact regarding whether defendants committed an intentional tort under the Worker's Disability Compensation Act (WDCA), MCL 418.101 *et seq.* We affirm.

## I. BACKGROUND

This case arises from the death of Michael Bay, Jr., decedent, while working in the course of his employment for defendants. Defendants are businesses that produce cryogenic tanks. To do this work, employees are required to wear an air-respirator helmet when sandblasting the tanks to protect themselves from asphyxiation. Mark Bauman is the owner of Erie Technologies, and Larry Ellison is a plant manager at its facility and was decedent's supervisor.

Decedent was found unresponsive on the floor of the sandblasting room on July 12, 2018. He was found wearing an air-respirator helmet that was supplied by defendants. That day, after his lunch break and before returning to the sandblasting booth, decedent asked an employee at the quality control office for a pain reliever. Around 3:00 p.m., Ellison went to check on decedent's progress in the sandblasting room and saw that decedent was unresponsive on the ground. He immediately removed the air-respirator helmet from decedent and saw that decedent's skin had turned blue. Attempts to revive decedent were unsuccessful.

The Monroe County Sheriff's Department reported that the air supply line connecting to the air-respirator helmet looked like it had been "spliced." However, a medical examiner, Dr. Lockman Sung, conducted an autopsy of decedent and concluded that the "cause of death [could not] be determined." Dr. Sung was able to determine that carbon monoxide was not a contributing factor in decedent's death. The Michigan Occupational Safety and Health Administration (MIOSHA) then conducted an investigation, led by MIOSHA investigator Megan Brock. Brock could not determine the exact cause of decedent's death. Notably, Brock tested the air flow output of the respirator helmet and concluded that there was no detection of any hazardous levels of carbon monoxide, carbon dioxide, or low oxygen in the sample air tested. Brock did not identify any defects in the provided equipment as the specific cause of decedent's death.

While Brock could not determine decedent's cause of death, MIOSHA did find that defendants violated several safety provisions. In its report of the violations, MIOSHA found that the air hose connected to decedent's helmet appeared to have multiple splices in it, decedent had not been provided annual training concerning respiratory protection, and the compressor used to supply air to the helmet was in a position to allow contaminants into the air supply.

Dr. Scott Singer, an expert witness for plaintiff, concluded that decedent died as a result of asphyxiation. Dr. Singer based this conclusion on the facts that decedent was wearing the supplied

---

his amended complaint. Mark Bauman, the owner of Erie Technologies, was originally named as a defendant but was similarly dropped from the case when plaintiff filed his amended complaint. Additionally, Erie Technologies, Inc., was formerly incorporated under the name F&B Technologies, Inc., and conducts business under its tradename Erie Technologies. Because they are the only defendants involved in the appeal, Erie Technologies, Inc., Erie Technologies, and F&B Technologies, Inc., will hereinafter be referred to collectively as "defendants."

Clemco helmet when he died, that air-respirator hoses had been spliced in the past, and that former employees had made complaints to management about faulty equipment and were ignored.

Gregory Zigulis, an expert witness for plaintiff who is an Industrial Hygienist and Certified Safety Professional, concluded that "Erie not only failed to exercise reasonable care to provide a safe work environment," but that defendants also "failed to do so despite manufacturer's warnings, employee complaints, and the requirements of its own written respiratory protection program."

At the time of his death, decedent was wearing a Clemco Apollo 600 HP helmet that was supplied by defendants. Ellison and Bauman stated that decedent was fully trained on using the Clemco helmet in fall of 2017. Bauman further testified that a Clemco helmet can be worn for about five minutes without any air supply. Additionally, the Clemco helmets become warm when there are problems with the airflow, which would allow the wearer to notice that there is an issue.

Ellison stated that he was not aware that decedent was experiencing any difficulties on the day of the incident. Likewise, Ellison testified that he had no knowledge that the Clemco helmet and air-respirator hose that decedent used were ever modified or altered. Additionally, the helmet decedent was wearing was two months old, the blast shield on it had been replaced on July 11, 2018, the day before his death, and the helmet filter was changed on July 2, 2018. The compressor for the sandblasting equipment was about two to three years old and had been recently serviced.

Defendants' Injury and Illness Protection Program required defendants to provide training to their employees before using the air-respirator helmets in the sandblasting booth. The program likewise required that defendants conduct assessments of the respirator programs and ensure that employees are medically qualified to wear the equipment. The user manual for the Clemco helmets also includes a series of warnings that state a "failure to comply with all instructions can result in serious injury or death." Ellison testified that he was aware that the helmets come with warnings. Additionally, a former employee stated that, when he began working at Erie Technologies, he and decedent told management about poor ventilation in the sandblasting booth but were told to return to work. Another former employee also reported problems with a defective oxygen mask and was likewise told to return to work.

Decedent's father, plaintiff, as personal representative of decedent's estate, brought a wrongful death claim against defendants under the WDCA. After discovery, defendants moved for summary disposition pursuant to MCR 2.116(C)(10) and argued that plaintiff could not prove that defendants had actual knowledge that an injury or death was certain to occur. Defendants argued that the MIOSHA report was insufficient to meet the standard for the intentional tort exception under the WDCA and that plaintiff did not present evidence to show that any particular employee had the requisite intent to injure decedent. Plaintiff responded to defendants' motion and argued there was sufficient circumstantial evidence to establish that defendants had actual knowledge that decedent's death was certain to occur. Plaintiff argued that defendants subjected decedent to the dangerous condition of working in a sandblasting booth with a faulty air-respirator helmet, defendants knew of the various warnings and safety instructions concerning the air-respirator helmets, and defendants had told former employees to return to work after reporting dangerous conditions in the past.

The trial court heard the parties' arguments during a motion hearing where the parties argued consistently with their written submissions. The trial court concluded that there was no question of fact regarding whether defendants committed an intentional tort under the WDCA. The trial court found that there was no evidence that decedent reported feeling unwell, that defendants ordered decedent back to work that day, or that defendants had actual knowledge of a dangerous condition that was certain to cause serious injury or death. Thus, the trial court granted defendants' motion for summary disposition.

## II. STANDARD OF REVIEW

"We review de novo a trial court's decision on a motion for summary disposition." *El-Khalil v Oakwood Healthcare, Inc*, 504 Mich 152, 159; 934 NW2d 665 (2019). When considering a motion under MCR 2.116(C)(10), "a trial court must consider all evidence submitted by the parties in the light most favorable to the party opposing the motion." *Id*. at 160. Only when there is no genuine issue of material fact may the motion be granted. See *id*. "A genuine issue of material fact exists when the record leaves open an issue upon which reasonable minds might differ." *Id*. (quotation marks and citation omitted). Further, "whether the facts alleged by plaintiff are sufficient to constitute an intentional tort is a question of law for the court, while the issue whether the facts are as plaintiff alleges is a jury question." *Travis v Dreis & Krump Mfg Co*, 453 Mich 149, 188; 551 NW2d 132 (1996) (quotation marks and citation omitted).

## III. INTENTIONAL TORT EXCEPTION TO THE WDCA

Plaintiff argues that there is a genuine question of material fact regarding whether defendants committed an intentional tort under the WDCA. Specifically, plaintiff contends that there is a genuine issue of material fact regarding whether defendants had actual knowledge that decedent's death was certain to occur and willfully disregarded that knowledge. We disagree.

The WDCA generally provides the exclusive remedy for workers who are injured during the course of their employment. See MCL 418.131(1). "[T]he exclusive remedy provision of the WDCA limits the liability of the employer and provides statutory compensation for employees regardless of fault." *Pro-Staffers, Inc v Premier Mfg Support Servs, Inc*, 252 Mich App 318, 323; 651 NW2d 811 (2002). However, there is one exception for intentional torts, MCL 418.131(1):

> The right to recovery of benefits as provided by this act shall be the employee's exclusive remedy against the employer for a personal injury or occupational disease. The only exception to this exclusive remedy is an intentional tort. An intentional tort shall exist only when an employee is injured as a result of a deliberate act of the employer and the employer specifically intended an injury. An employer shall be deemed to have intended to injure if the employer had actual knowledge that an injury was certain to occur and willfully disregarded that knowledge. The issue of whether an act was an intentional tort shall be a question of law for the court. This subsection shall not enlarge or reduce rights under law.

To establish an intentional tort, a plaintiff must show (1) that the injury was caused by the employer's "deliberate act," and (2) that the employer "had a conscious purpose to bring about specific consequences." *Palazzola v Karmazin Prods Corp*, 223 Mich App 141, 149; 565 NW2d

868 (1997). Additionally, "[w]hen an employer is a corporation, a particular employee must possess the requisite state of mind in order to prove an intentional tort." *Id.* at 149. Thus, a plaintiff must show that "a particular employee of the defendant possessed knowledge of facts from which it could be concluded that this employee had the requisite intent to injure." *Id.* at 152.

On appeal, both plaintiff and defendants focus their arguments on the second element of the intentional tort standard. That is, they are in dispute whether defendants had actual knowledge that injury or death was certain to occur and willfully disregarded that knowledge.

For the second element, an employer specifically must have intended an injury when the employer "had actual knowledge that an injury was certain to occur and willfully disregarded that knowledge." MCL 418.131(1). "Actual knowledge" precludes employer liability "based upon implied, imputed, or constructive knowledge." *Palazzola*, 223 Mich App at 149. Thus, an employer must have had actual knowledge that "an injury would follow from what the employer deliberately did or did not do." *Id.* (quotation marks and citation omitted). An "injury certain to occur" requires an "extremely high standard of proof that cannot be met by reliance on the laws of probability, the mere prior occurrence of a similar event, or conclusory statements of experts." *Id.* at 149-150 (quotation marks and citation omitted). It is not enough that an employer is simply aware that a dangerous condition exists. See *id.* at 150. Instead, the employer must know that the injury is certain to result from the employer's act or omission. See *id.* Finally, "willfully disregard" requires proof that "an employer's act or failure to act must be more than mere negligence." *Id.* An employer must instead disregard the actual knowledge that the injury is certain to occur. *Id.*

Circumstantial evidence may be used to show intent to injure. See *Travis*, 453 Mich at 173. The WDCA "allows the employer's intent to injure to be inferred if the employer had actual knowledge that an injury was certain to occur, under circumstances indicating deliberate disregard of that knowledge." *Id.* at 180.

We conclude that plaintiff failed to establish, either with direct or circumstantial evidence, that defendants' actions constituted an intentional tort because plaintiff's evidence does not support a reasonable inference that defendants had actual knowledge of an injury certain to occur and that they willfully disregarded that knowledge.

Plaintiff argues that the MIOSHA citation report established that defendants knew of the dangers of faulty air-respirator systems and failed to protect decedent from those known dangers. The report found that defendants had violated multiple MIOSHA safety regulations, including that decedent's helmet appeared to have multiple splices in it and that the compressor used to supply air to the helmet was in a position to allow contaminants into the air supply. However, the report did not establish that a particular supervisory employee involved in the events on the day of the incident had actual knowledge that decedent's serious injury or death was certain to occur. Instead, it generally reflects an institutional laxity in following certain regulations.

In *Palazzola*, the plaintiff similarly presented a MIOSHA report prepared after the decedent's death that indicated the employer failed to provide sufficient training and protections for its workers. *Palazzola*, 223 Mich App at 151-152. The report also indicated that the violations were willful and that the employer had received citations for safety violations in the past. *Id.* at

152. However, this Court concluded that the report did not impute liability to the employer because there was no evidence that any specific managerial employee had actual knowledge of the danger of certain injury on the day of the incident. *Id*. As with the report in *Palazzola*, we conclude that the MIOSHA report offered by plaintiff does not establish that any supervisor on the day of decedent's death had actual knowledge that decedent's death was certain to occur. Thus, liability cannot be imputed upon defendants based on the MIOSHA report.

Similarly, here, plaintiff presented expert reports that stated decedent died from asphyxiation and that defendants knew that a faulty air-respirator helmet could cause asphyxia. However, even taking these facts as true, neither report establishes that any particular supervisor had actual knowledge that decedent's death by asphyxiation was certain to occur. Further, Zigulis' report concluded that defendants "failed to exercise reasonable care to provide a safe work environment," which sounds of negligence.

Plaintiff also argues that defendants were aware that misuse of the Clemco helmets would result in certain injury or death. However, Ellison testified that he had no knowledge that the Clemco helmet and air-respirator hose that decedent used had ever been modified or altered. Additionally, although the helmets came with warnings and safety instructions, decedent's supervisors testified that they had no knowledge that misuse of the helmets could lead to potential asphyxiation. Constructive knowledge is insufficient to establish the actual knowledge requirement for the intentional tort exception. See *Travis*, 453 Mich at 173-174. Thus, while decedent's supervisors may have had constructive knowledge, or should have known through the included warnings, that death or serious injury may result from misuse of the helmets, the evidence presented does not establish that either Ellison or Bauman actually were aware that a faulty helmet would result in decedent's certain death.

Further, decedent had been trained on the proper use of the helmets in 2017, and because the helmets get warm when there are problems with the airflow, sandblasting employees may notice when the helmets are not operating as they should be. Additionally, the sandblasting equipment was only two years old, and the Clemco helmet decedent used the day of the incident had been used for only a couple of months. Moreover, during her independent testing of the sandblasting equipment, Brock did not identify any defects in the provided air-respirators as the cause of decedent's death. Likewise, there is no evidence presented that either Ellison or Bauman had any reason to know that there was a specific defect with the sandblasting equipment decedent was using the day of the incident.

Thus, because there is no evidence that decedent experienced problems with his relatively new equipment or that decedent reported any issues to his supervisor before the incident, we conclude that there is no question of fact regarding whether Ellison or Bauman possessed actual knowledge that defendant was experiencing problems with his helmet or that decedent's death was certain to occur from use of a faulty helmet.

In *Travis*, the leading case on the intentional tort exception to the WDCA, the plaintiff suffered serious injury to her fingers when the machinery she was using operated a second time without the plaintiff pressing any of the machine's buttons. *Travis*, 453 Mich at 155. The machine had been "double cycling" for about one month before the plaintiff's injury, and the defendant had been making adjustments to the machine that would temporarily correct the problem. *Id*. The

defendant instructed the plaintiff on how to use the machine but did not tell her that it had been double cycling. *Id*. *Travis* concluded that, even though the plaintiff's supervisor knew that the machine had been malfunctioning, he did not know that serious injury was certain to occur. *Id*. at 182. The machine had been serviced shortly before the plaintiff used it, and such adjustments had previously allowed the machine to operate for at least a few days without double cycling. *Id*. Additionally, the machine "cycled so slowly that no one had ever been injured when the press double cycled previously. All prior operators were able to withdraw their hands in time." *Id*. Thus, the Court concluded that there was no genuine issue of fact regarding whether the defendant had actual knowledge that the serious injury was certain to occur. *Id*. at 183.

In *Golec v Metal Exchange Corp*, 453 Mich 149, 158; 551 NW2d 132 (1996), the companion case consolidated with *Travis*, the plaintiff was loading metal into a furnace when he was slightly burned by a small explosion. The plaintiff reported the danger to his supervisor, explaining "that he believed the explosion was due to either the presence of closed aerosol cans in the scrap pile, or the fact that the scrap pile was wet," and his supervisor told the plaintiff to return to work at the same furnace. *Id*. Shortly after, a large explosion occurred in the furnace, and the plaintiff was severely injured after being burned by molten aluminum. *Id*. Based on these facts, the Court concluded that there was sufficient evidence to establish a genuine issue of material fact regarding whether defendant had actual knowledge that the plaintiff's serious injury would occur. *Id*. at 184. The Court reasoned that the "plaintiff has presented evidence that, despite knowledge of the earlier explosion, [the] defendant failed to remedy the condition that caused it." *Id*. at 187.

Here, even accepting the facts in the light most favorable to plaintiff, the nonmoving party, that decedent's death was caused by asphyxiation due to a faulty Clemco helmet, we conclude that there is no genuine issue of material fact regarding whether defendant had actual knowledge that decedent's death was certain to occur. Unlike in *Golec*, in which the plaintiff reported a specific danger shortly before his injury occurred, there is no evidence that decedent reported an issue with his sandblasting equipment or air-respirator helmet to his supervisor shortly before the incident, nor is there evidence that decedent's supervisors ordered him back to work despite the danger. There is also no evidence that other employees had made similar complaints regarding the air-respirator helmets. Additionally, there is no evidence to support that decedent's supervisors were aware that decedent was feeling ill. Evidence presented shows that decedent asked a fellow employee at the quality control office for a pain reliever. Decedent's supervisor testified that he was unaware that decedent was experiencing any difficulties the day of the incident, but even if he was, we conclude that asking for a pain reliever is not sufficient to create a genuine question of fact regarding whether defendants had actual knowledge that decedent's death was certain to occur.

Plaintiff also cites *Fries v Mavrick Metal Stamping, Inc*, 285 Mich App 706, 714-715; 777 NW2d 205 (2009), in support of his claim that defendants possessed actual knowledge that decedent's death was certain to occur. However, in *Fries*, the injured employee had reported the workplace danger to his supervisor, and the defendant's owner acknowledged that he was aware that injury would result if the danger was not fixed. *Id*. at 714. The defendant also explicitly acknowledged that he was aware that the specific equipment the decedent was using was faulty. *Id*. Unlike in *Fries*, again, there is no evidence that decedent reported to his supervisors that any of his sandblasting equipment or Clemco helmet was faulty. Additionally, there is no evidence that Ellison or Bauman actually knew that decedent's helmet was not up to safety standards.

Even considering the circumstantial evidence presented in the light most favorable to plaintiff, we conclude that there is not enough to establish a genuine issue of material fact regarding whether decedent's supervisors possessed actual knowledge that decedent's death was certain to occur. While decedent asked for a pain reliever the day of the incident, and while defendants were supplied with manufacturer safety warnings for the air-respirator helmets, this circumstantial evidence establishes that defendants had, at most, mere constructive knowledge of decedent's potential death. Further, while this evidence may establish that defendants' actions, or lack thereof, were grossly negligent, gross negligence is not enough to find defendants liable under the intentional tort exception to the WDCA. See *Palazzola*, 223 Mich App at 150. Thus, we agree with the trial court that there is no genuine issue of material fact regarding whether defendants committed an intentional tort.

## IV. CONCLUSION

The trial court correctly granted summary disposition in favor of defendants. We affirm.


/s/ Michelle M. Rick
/s/ Michael J. Kelly
/s/ Michael J. Riordan