# STATE OF MICHIGAN

# COURT OF APPEALS

JEFFREY M. BEURKENS,

        Plaintiff-Appellant,

v

JESSICA MARIE BOUMAN and BONNIE LOU
BOUMAN,

        Defendants-Appellees.

UNPUBLISHED
August 11, 2016

No. 329231
Kent Circuit Court
LC No. 14-009584-NI

Before: SERVITTO, P.J., and MARKEY and GLEICHER, JJ.

PER CURIAM.

In this third-party tort action for noneconomic damages under the no-fault act, MCL 500.3101 *et seq.*, plaintiff appeals by right the trial court's July 28, 2015 opinion and order granting defendants summary disposition under MCR 2.116(C)(10) because the undisputed material facts showed that plaintiff had failed to raise a genuine issue that he had suffered a serious impairment of an important body function. MCL 500.3135(1); (5). Plaintiff also appeals the trial court's August 25, 2015 order denying his motion for rehearing on the basis of a claim for excess economic damages under MCL 500.3135(3)(c). The trial court issued its first order by finding that any "dispute concerning the nature and extent of [plaintiff's] injuries [was] . . . "not material to the determination," MCL 500.3135(2)(a)(ii), whether "an objectively manifested impairment of an important body function [affected plaintiff's] general ability to lead his or her normal life." MCL 500.3135(5). The trial court issued its second order because plaintiff had presented no evidence to support a claim for economic damages. We affirm.

## I. SUMMARY OF PERTINENT FACTS AND PROCEEDINGS

This case arises out of a motor vehicle accident that occurred on October 20, 2011. A vehicle driven by defendant Jessica Marie Bouman and owned by defendant Bonnie Lou Bouman struck the rear of a vehicle that plaintiff was driving. Plaintiff's vehicle was not operable after the accident, but plaintiff reported no injury. Plaintiff sought treatment at an urgent care facility on October 24, 2011 for headache, anxiety, neck stiffness, and back pain. X-rays of plaintiff's cervical spine taken on this visit revealed no fractures or malalignment, and that his "percervical soft tissues and intervertebral disc spaces appear[ed] normal." In an affidavit dated June 17, 2015, plaintiff's family doctor, Christopher Barnes, D.O., opined that as a result of the accident plaintiff "suffered a flexion/extension injury to his cervical spine."

-1-

Plaintiff sought treatment from Dr. Barnes on December 21, 2011, complaining of left hand and left shoulder numbness. An MRI[1] was performed on plaintiff on January 5, 2012. The results of this MRI were reported as normal but showed "[l]imited but visible narrowing of the right C5 and the right C6 foramina." This finding, however, was reported as "actually of uncertain clinical significance because [plaintiff] complains of symptoms in the left upper extremity." Plaintiff again sought treatment for left-sided neck pain on February 1, 2012, but had full range of motion for his neck and both shoulders. Similarly, plaintiff sought treatment for another complaint on March 27, 2012 (sore throat) and reported no neck or back pain and had full range of motion. An August 2012 EMG[2] performed on plaintiff was normal; Dr. Barnes' records also note that plaintiff's prior MRI and X-rays were "unremarkable."

Plaintiff earned a bachelor's degree from Michigan State University in 2010, and at the time of the accident, worked part time as a paralegal at his father's law firm. In answers to interrogatories and in his deposition, plaintiff testified that he was making no claim for lost wages. In April 2012, plaintiff drove himself to California where he lived and worked various jobs. He remained there until he decided to drive himself back to Michigan in April 2013 to resume residing in this state. Plaintiff did not seek medical treatment while in California, but he did obtain a medical marijuana card in October 2012. He obtained his Michigan medical marijuana card in February 2014. Other than taking an occasional ibuprofen for headache, marijuana was plaintiff's drug of choice. He regularly used marijuana before the accident and did so more frequently after the accident.

After moving back to Michigan in April 2013, plaintiff worked a full-time job as a seasonal customer service representative at a Meijer call center. This job entailed working on a computer and talking on the telephone with customers. Plaintiff testified that he would tolerate left-sided numbness by taking frequent stretching breaks. Plaintiff described symptoms he attributed to the accident as being a "clamping" feeling around his left armpit while driving or while working on a computer for more than 30 minutes, resulting in hand numbness. Plaintiff would obtain relief from his symptoms while driving by pressing on his collarbone or on his xiphoid process, which is "the third and lowest segment of the human sternum." *Merriam-Webster's Collegiate Dictionary* (11th ed). Plaintiff acknowledged his symptoms did not prevent him from driving, and that what he experienced was "more discomfort and distracting

---

[1] "Magnetic resonance imaging is a scanning technology that permits detailed, potentially three-dimensional viewing of soft tissue structures within the body—such as muscles, nerves, and connective tissue—without using ionizing radiation; as distinct from x-rays or CT scans, which do subject the body to ionizing radiation and are much less useful for visualizing soft tissue." *Chouman v Home Owners Ins Co*, 293 Mich App 434, 442 n 4; 810 NW2d 88 (2011).

[2] "Electromyography detects electrical activity in muscle tissues in order to evaluate the health and functionality of those tissues, although abnormal results can be indicative of a wide range of problems ranging from strictly muscle dysfunction to strictly nerve dysfunction. The test may be performed through the insertion of needles directly into muscles or through the use of surface electrodes." *Chouman*, 293 Mich App at 442 n 5.

than it is sharp pain." Similarly, plaintiff's symptoms did not cause him to miss any work or work opportunities, or prevent him from engaging in other pre-accident activities.

In May 2013, plaintiff again sought treatment from Dr. Barnes, this time for right neck pain. Dr. Barnes ordered another MRI, which was performed on May 15, 2013. This MRI showed that plaintiff's spine was completely normal. Specifically, Dr. Angelo Porcari reported finding "no significant degenerative disc disease, central spinal stenosis, or foraminal narrowing", at C2-3, C3-4, C4-5, C5-6, C6-7, or C7-T1 of plaintiff's spine.

Plaintiff saw Dr. Barnes for general physical examination on September 19, 2013. Plaintiff reported that he was "well in general" and "very active." Plaintiff related continuing symptoms of "tightness in his left upper chest with certain activities." Plaintiff also reported he did not have weakness, numbness, or tingling radiating down his arm.

Plaintiff left his job with Meijer in January 2014 because that seasonal job had ended, and because he did not want to accept Meijer's offer of a position where he would work at home. He went to work for the Amway Grand Plaza as a bellman in February 2014; this job required being able to lift 50 pounds. At the same time, plaintiff started working part-time as a waiter/assistant caterer for Gilmore Catering. In January 2015, plaintiff resigned his jobs at the Grand Plaza and Gilmore Catering to take a full-time position paying more money at Farmers Insurance in Grand Rapids. His job at Farmers, which he continued to hold at the time of the motion for summary disposition, primarily involved working on a computer and talking on the phone negotiating settlements for vehicles that were deemed total losses from various accidents.

On September 2, 2014, plaintiff saw a physician assistant in Dr. Barnes' office for an annual examination. Plaintiff reported pain in his left shoulder and having spasms when holding certain positions. Plaintiff stated he managed these symptoms with stretching. Plaintiff had full range of motion, and he reported no problems with headaches, weakness, or numbness. Plaintiff also stated that he did not believe that further evaluation was needed.

Despite the foregoing, plaintiff returned to Dr. Barnes' office on October 7, 2014, now reporting neck pain and headaches. Plaintiff reported the pain was mild, and he would normally take nothing for it. Dr. Barnes ordered a CT scan[3] and evaluation. Dr. James Patrick Bares performed the October 21, 2014 CT scan of plaintiff's cervical spine. He reported normal findings except for "[m]ild uncovertebral arthropathy at C4-C5 and C6-C7." He found no "spinal canal or neural foraminal stenoisis" at C4-C5. As for C6-C7, the spinal canal and left neural foramen were patent. The uncovertebral arthropathy at C6-C7 resulted in only "mild

---

[3] "Computed tomography, more commonly known as a CT or CAT scan, is a diagnostic medical test that, like traditional x-rays, produces multiple images or pictures of the inside of the body. . . . CT images of internal organs, bones, soft tissue and blood vessels typically provide greater detail than traditional x-rays, particularly of soft tissues and blood vessels." Radiological Society of North America, Inc., *Computed Tomography (CT) – Body*, http://www.radiologyinfo.org/en/info.cfm?pg=bodyct (Accessed July 19, 2016).

narrowing of the right neural foramen." Except for an affidavit signed by Dr. Barnes, no expert testimony links these findings to the accident or to plaintiff's reported left-sided symptoms.

In an affidavit signed June 17, 2015, filed in response to defendant's motion for summary disposition, Dr. Barnes relied on the January 2012 MRI and the October 2014 CT scan to opine that there were "objective findings" causing plaintiff "to suffer symptoms consistent with the findings in [the] MRI and CAT scan." He also opined that plaintiff suffered from "facet arthropathy that is traumatic arthritis caused by the accident on October 20, 2011." Finally, Dr. Barnes opined that plaintiff's "work and daily activities are impaired as a result of the injuries Jeff suffered to his cervical spine that occurred on October 20, 2011."

Plaintiff filed his third-party claim of negligence against defendants on October 10, 2014. After discovery, defendants moved for summary disposition on May 29, 2015. This was argued by the parties on July 17, 2015. The trial court issued its opinion and order granting the motion on July 28, 2015. After discussing the evidence of plaintiff's medical, work, and social history, the trial court addressed plaintiff's claim of having suffered a "serious impairment of body function," MCL 500.3135(1), meaning "an objectively manifested impairment of an important body function that affects the person's general ability to lead his or her normal life." MCL 500.3135(5). The trial court observed, regarding an objectively manifested impairment of an important body function, that "[p]laintiff simply claims that there is some situational and positional pain, discomfort, and tingling." The trial court then opined:

> It appears doubtful that plaintiff has provided evidence that shows an objectively manifested impairment of an important body function. However, this issue need not be decided. Regardless of whether or not there is an objectively manifested impairment of an important body function . . . plaintiff has not shown this affects his general ability to lead his normal life as required by MCL 500.3135(5). . . . Plaintiff only mentioned having to stretch every 30 minutes or so when he drives or uses a computer. He did not pass on any employment opportunities and could not recall ever foregoing a trip because of his symptoms. His life has changed since the accident, but he acknowledged this could be due to his change in schedule.

The trial court rejected plaintiff's effort to supplement his deposition testimony with a last-minute affidavit asserting that after the accident he was less physically and socially active than before the accident. The trial court noted that plaintiff did not explain how his activity level related to any injuries from the accident, which previously had been reported as "related to the activities of driving and working on a computer." The trial court also stated that in his deposition, plaintiff acknowledged that "changes in his habits could just as easily be attributable to his changing schedule." The trial court also noted, citing *Casey v Auto Owners Ins Co*, 273 Mich App 388, 396 (2006), that a witness cannot contradict the witness's deposition testimony with a subsequent affidavit to avoid summary disposition.

The trial court further opined that plaintiff had not explained how periodic stretching breaks while driving or working on a computer "affect his general ability to live his normal life." Further, the court noted that plaintiff in his deposition testimony admitted that the muscle spasm

and pain that he situationally experienced was "more discomfort and distracting than it is sharp pain." Accordingly, the trial court's July 28, 2015 opinion and order concluded:

> When viewing the record in a light most favorable to plaintiff, the record shows someone who has some situational discomfort related to the car accident. However, plaintiff has not shown an impairment of a body function affecting his ability to lead his normal life. All indications are that plaintiff is able to easily take care of the issues by periodically stretching and he functions normally. It is unfortunate if he still experiences some symptoms from the car accident, but he can presumably still get first-party no-fault benefits to deal with medical costs related to issues from the accident. There is not anything in the record that would allow a reasonable factfinder to conclude he suffered something amounting to a serious impairment of body function, as the term is defined under Michigan law.

> [P]laintiff's complaints of discomfort and distraction while driving or working on a computer do not create a genuine issue of material fact regarding serious impairment of body function. Defendants are entitled to summary disposition.

On August 17, 2015, plaintiff filed a motion for rehearing on the basis that the trial court had committed palpable error by not considering when granting defendants' motion for summary disposition plaintiff's claim for economic damages under MCL 500.3135(3), which were not subject to a threshold injury requirement of MCL 500.3135(1), (5). Plaintiff's motion was accompanied by a one-paragraph brief incorporating plaintiff's brief in opposition to defendants' motion for summary disposition, which did not discuss economic damages. On August 25, 2015, the trial court issued its opinion & order denying plaintiff's motion for rehearing, stating, in part:

> After reviewing the categories of damages listed in MCL 500.3135(3)(c), survivor's loss clearly does not apply, plaintiff previously stated he is not seeking work loss, and plaintiff has not mentioned any excess allowable expenses. Furthermore, to whatever extent plaintiff may be attempting to claim additional damages to cover replacement services, the Michigan Supreme Court has held that "in a third-party tort action, damages for replacement services are not recoverable pursuant to MCL 500.3135(3)(c)." *Johnson v Recca*, 492 Mich 169, 176 (2012).

On August 27, 2015, plaintiff filed a second motion for rehearing, which was supported by an affidavit plaintiff signed August 26, 2015 that stated he was facing impending discipline or dismissal by Farmers Insurance because of his inability to keep up with his assigned workload because of his "inability to focus for long periods of time due to chronic pain and discomfort." The trial court, by order dated August 28, 2015, denied this motion. Again, the court observed the affidavit was contrary to plaintiff's deposition testimony and that a party cannot contrive factual issues by relying on an affidavit that makes claims contrary to his deposition testimony. Finally, the trial court noted that "a motion for rehearing of a motion for rehearing of a motion for summary disposition is not the proper time to first raise the possibility of a wage loss claim."

Plaintiff appeals by right the trial court's orders of July 28, 2015 and August 25, 2015.

## II. STANDARD OF REVIEW

This Court reviews de novo the trial court's grant or denial of a motion for summary disposition. *Miller v Purcell*, 246 Mich App 244, 246; 631 NW2d 760 (2001). A motion for summary disposition under MCR 2.116(C)(10) tests the factual sufficiency of a claim and must be supported by affidavits, depositions, admissions, or documentary evidence. See MCR 2.116(G)(3)(b); MCR 2.116(G)(4); *Bronson Methodist Hosp v Auto-Owners Ins Co*, 295 Mich App 431, 440; 814 NW2d 670 (2012). When considering a motion under MCR 2.116(C)(10), a court must view the proffered evidence in the light most favorable to the party opposing the motion. *Miller*, 246 Mich App at 246. "The motion should be granted if the affidavits or other documentary evidence demonstrate that there is no genuine issue with respect to any material fact, and the moving party is entitled to judgment as a matter of law." *Id.* "A genuine issue of material fact exists when the record, giving the benefit of reasonable doubt to the opposing party, leaves open an issue upon which reasonable minds might differ." *West v Gen Motors Corp*, 469 Mich 177, 183; 665 NW2d 468 (2003).

## III. ANALYSIS

## A. NONECONOMIC DAMAGES

Under the no fault insurance act, MCL 500.3101 *et seq.*, tort liability for noneconomic damages is generally limited to circumstances when the injured person has suffered a threshold injury of "death, serious impairment of body function, or permanent serious disfigurement." MCL 500.3135(1); *McCormick v Carrier*, 487 Mich 180, 189-190; 795 NW2d 517 (2010). In this case, plaintiff alleges he satisfied the threshold requirement to bring a tort action for noneconomic damages on the basis of having suffered a "serious impairment of body function" which is defined as "an objectively manifested impairment of an important body function that affects the person's general ability to lead his or her normal life." MCL 500.3135(5).

Our Supreme Court held in *McCormick*, 487 Mich at 215, that a "serious impairment of body function" is comprised of three elements:

> (1) an objectively manifested impairment (observable or perceivable from actual symptoms or conditions) (2) of an important body function (a body function of value, significance, or consequence to the injured person) that (3) affects the person's general ability to lead his or her normal life (influences some of the plaintiff's capacity to live in his or her normal manner of living).

This means that the determination of whether a "serious impairment of body function" exists is fact-specific and must be made on a case-by-case basis. *Id.*

The first element is that impairment of body function be "objectively manifested" means that the impairment must be "evidenced by actual symptoms or conditions that someone other than the injured person would observe or perceive as impairing a body function." *McCormick*, 487 Mich at 196. "In other words, an 'objectively manifested' impairment is commonly understood as one observable or perceivable from actual symptoms or conditions." *Id.* The objective manifestation must be of the impairment rather than the injury; the focus is on how the injury affected a particular body function. *McCormick*, 487 Mich at 197. Complaints of pain

-6-

and suffering alone are insufficient to establish an impairment of an important body function. *Id*. Thus, "any plaintiff that comes to court and shows only pain and suffering cannot claim an impairment of a body function. The plaintiff must also prove an objectively manifested injury which seriously impairs an important function of plaintiff's body." *Schubot v Thayer*, 156 Mich App 545, 548; 402 NW2d 2 (1986). In sum, the objective-manifestation requirement generally requires medical testimony demonstrating a physical basis for subjective complaints of pain and suffering that actually impair an important body function. *McCormick*, 487 Mich at 197-198.

In this case, the objective tests on plaintiff's cervical spine, including X-rays, two MRI's, an EMC, and a CT scan, provided mixed results as to whether there might be a physical basis for plaintiff's claimed symptoms of primarily left-sided pain and muscle spasms. Only Dr. Barnes, whose qualifications concerning the interpretation of such tests is unknown, opined in an affidavit that the tests showed "traumatic arthritis caused by the accident on October 20, 2011." Further, only Dr. Barnes, in his affidavit, linked the findings of the January 2012 MRI and the October 2014 CT scan to symptoms plaintiff reported. Finally, Dr. Barnes opined that plaintiff's "work and daily activities are impaired as a result of the injuries Jeff suffered to his cervical spine that occurred on October 20, 2011." Plaintiff's argument on appeal that the trial court erred by ignoring Dr. Barnes' affidavit are unavailing.

First, the trial court did not ignore Dr. Barnes' affidavit. The trial court merely observed that while plaintiff claimed that mild foramina narrowing shown on scans could cause various symptoms he claimed, including pain and tingling in various areas, it was unclear what important body function was impaired. Furthermore, the evidence indicated that plaintiff had a full range of motion and that he tolerated "some situational and positional pain, discomfort, and tingling." As noted, objective evidence of an injury and pain alone, without a showing that it results in an impairment of an important body function, is insufficient to establish "an objectively manifested impairment of an important body function . . . ." MCL 500.3135(5); *McCormick*, 487 Mich at 197; *Schubot*, 156 Mich App at 548. More importantly, the trial court properly ruled that "this issue need not be decided." MCL 500.3135(2)(a)(ii) permits a court to decide whether an "injured person has suffered serious impairment of body function" as a matter of law when "[t]here is a factual dispute concerning the nature and extent of the person's injuries, but the dispute is not material to the determination . . . ." See *McCormick*, 487 Mich at 193-194. In this case, the dispute concerning the nature and extent of plaintiff's injury was not "significant" or "essential" to determine whether the claimed impairment "affects the [plaintiff's] general ability to lead his . . . normal life." MCL 500.3135(5); See *McCormick*, 487 Mich at 194, 216-217.

The third element of the no-fault threshold for a noneconomic tort claim is whether the objectively manifested impairment, "affects the person's general ability to lead his or her normal life . . . ." MCL 500.3135(5). This requires the impairment "to have an influence on some of the person's capacity to live in his or her normal manner of living." *McCormick*, 487 Mich at 202. This is a subjective, fact-specific inquiry determined on a case-by-case basis. *Id*. "Determining the effect or influence that the impairment has had on a plaintiff's ability to lead a normal life necessarily requires a comparison of the plaintiff's life before and after the accident." *Id*. There must be evidence that the impairment affects, but not necessarily destroys, the person's general ability to live his or her normal life. *Id*. The statute does not establish "a quantitative minimum as to the percentage of a person's normal manner of living that must be affected." *Id*. at 203.

The trial court did not err by concluding, based on documentary evidence submitted to it on this issue (primarily plaintiff's historical medical record and plaintiff's deposition testimony), that plaintiff's claimed impairment did not affect his "general ability to lead his or her normal life . . . ." MCL 500.3135(5). Consequently, the trial court correctly ruled that the submitted evidence "would [not] allow a reasonable factfinder to conclude he suffered something amounting to a serious impairment of body function[.]" Specifically, the evidence showed that while plaintiff testified to experiencing pain and muscle spasms while driving or working on a computer for an extended time, he also testified that he tolerated and managed these symptoms by stretching and performing certain maneuvers (pressing on his collarbone or xiphoid process). The record evidence shows that plaintiff was able to drive for great distances, and work at jobs requiring extensive computer use or requiring physical labor. Plaintiff did not testify that his symptoms prevented from engaging in any activity he performed before the accident. While plaintiff's habits with respect to certain activities changed after the accident, he did not attribute these changes to an accident-caused injury or the pain and muscle spasms he claimed occurred when holding certain positions. Thus, the trial court properly ruled as a matter of law that "plaintiff's complaints of discomfort and distraction while driving or working on a computer do not create a genuine issue of material fact regarding serious impairment of body function." See *Miller*, 246 Mich App at 249-250 (the plaintiff did not establish a serious impairment of body function affected her general ability to lead her normal life where she was able to perform all the same activities that she did before the accident, could work a 40-hour week, and did not show any aspect of her day-to-day activities has been curtailed).

Plaintiff argues that trial court erred by not considering his affidavit that stated that after the accident he did not play tennis, or go hiking, cross-country skiing, kayaking, and bicycling as much as before the accident. But during his deposition, plaintiff was given the opportunity to explain how the accident had affected his activities and he did not mention any effect on these activities. "It is well settled that a party may not raise an issue of fact by submitting an affidavit that contradicts the party's prior clear and unequivocal testimony." *Palazzola v Karmazin Products Corp*, 223 Mich App 141, 155; 565 NW2d 868 (1997); see also *Silberstein v Pro-Golf of America, Inc*, 278 Mich App 446, 459; 750 NW2d 615 (2008).

The trial court discussed plaintiff's affidavit concerning his lessened engagement in sports activities, as well as doing less "household chores," but observed that plaintiff in his deposition testified that his "symptoms are primarily 'situational' and positional related to the activities of driving and working on a computer." Further, the trial court noted that plaintiff did not explain how his purported accident-caused symptoms impacted his ability to engage in the activities described in the affidavit. The trial court also noted that since the accident, plaintiff's life had changed from living with his father and working part time to living on his own and working fulltime, and that plaintiff had acknowledged in his deposition that "the changes in his habits could just as easily be attributable to his changing schedule." Under these circumstances, in the absence of an explanation for the omission of these new claims from his deposition testimony, the trial court did not err by concluding the affidavit was an effort to contradict plaintiff's prior clear and unequivocal testimony. As such, the trial court properly did not consider them. *Silberstein*, 278 Mich App at 459; *Palazzola*, 223 Mich App at 155.

Based on the foregoing, we conclude that the trial court did not err by finding that any "dispute concerning the nature and extent of [plaintiff's] injuries [was] . . . "not material to the

determination," MCL 500.3135(2)(a)(ii), whether "an objectively manifested impairment of an important body function that affects [plaintiff's] general ability to lead his or her normal life." MCL 500.3135(5). Further, the trial court did not err by issuing its July 28, 2015 opinion and order granting defendants summary disposition as to plaintiff's tort action for noneconomic damages because the undisputed material facts showed that plaintiff had failed to raise a question of fact that he had suffered an objectively manifested impairment of an important body function that affects his general ability to lead his normal life. MCL 500.3135(1); (5).

C. EXCESS ECONOMIC DAMAGES

Plaintiff also asserts the trial court erred by granting defendants summary disposition with respect to plaintiff's claim for excess economic benefits under MCL 500.3135(3)(c). This subsection states, in pertinent part:

> (3) Notwithstanding any other provision of law, tort liability arising from the ownership, maintenance, or use within this state of a motor vehicle with respect to which the security required by section 3101 was in effect is abolished except as to:

* * *

> (c) Damages for allowable expenses, work loss, and survivor's loss as defined in sections 3107 to 3110 in excess of the daily, monthly, and 3-year limitations contained in those sections. [MCL 500.3135(3)(c).]

Like the trial court, we see no merit whatsoever in this claim. We find no evidence in the record of any economic loss that plaintiff suffered, let alone evidence of economic loss in excess of the limits imposed by the no-fault act. Plaintiff on appeal points to no evidence that he has suffered economic loss, and his argument that the trial court erred is also unsupported. An appellant may not merely announce his position and leave it to this Court to discover and rationalize the basis for his claims. *Wilson v Taylor*, 457 Mich 232, 243; 577 NW2d 100 (1998). "It is axiomatic that where a party fails to brief the merits of an allegation of error, the issue is deemed abandoned by this Court." *Prince v MacDonald*, 237 Mich App 186, 197; 602 NW2d 834 (1999).

Moreover, plaintiff's claim is meritless. No claim is made for allowable expenses, and survivor's loss clearly does not apply. To the extent plaintiff's claim relates to work loss, we note he not only presented no evidence of any lost income, but also he specifically disclaimed making such a claim. Furthermore, to the extent plaintiff's claim relates to an alleged loss of earning capacity, it is unavailable. See *Hannay v Dep't of Transportation*, 497 Mich 45, 79-81; 860 NW2d 67 (2014) (discussing MCL 500.3135(3)(c) does not support a claim for lost earning-capacity).

We affirm. Defendants, as the prevailing party, may tax their costs under MCR 2.719.

/s/ Deborah A. Servitto
/s/ Jane E. Markey
/s/ Elizabeth L. Gleicher