### JOLLY *v.* MICHIGAN CENTRAL RAILROAD CO.

RAILROADS—NEGLIGENCE—OPERATION OF TRAINS—SIGNALS—SIDE TRACKS.

Plaintiff's declaration charged that he was injured by defendant's employés who impelled a number of cars against certain standing freight cars behind which he was engaged in working on the side track of a mining company; that he was trying to move a loaded car between which and the standing cars he was working; that no signals or warning were given by the engine that was doing the switching and that defendant's servants negligently handled the train.    From the testimony it appeared that the train crew had no notice of plaintiff's presence about the cars, that the conductor had switched in the standing cars a few minutes before, and saw no one working about the cars; that he set the brakes, blocked them, and the train temporarily left; that except for the use of unusual force, an element of negligence not counted on in the declaration, the train was operated in the usual manner. Plaintiff had actual notice of the presence of the train which he saw doing switching.    *Held*, that no negligence averred by the declaration was proved.

Error to Bay; Collins, J. Submitted June 19, 1911. (Docket No. 96.) Decided October 2, 1911.

Case by Louis Jolly against the Michigan Central Railroad Company for personal injuries. Judgment for plaintiff. Defendant brings error. Reversed.

*Cooley & Hewitt* (*Humphrey, Grant & Baker,* of counsel), for appellant.

*James Donnelly,* for appellee.

BLAIR, J. This is an action on the case to recover damages for personal injuries suffered by the plaintiff, a general utility man in the employ of the Beaver Coal Mine Company, the owner of certain railroad tracks, which, at the time of the injuries, were being used by defendant.

The first count of the declaration alleges:

" That in the handling and operation of its cars, trains, and locomotives, and in the conducting of its said railroad business upon and along said railroad line, and in the handling of its coal and freight cars and trains thereon, it became and was the legal duty of defendant to exercise due and reasonable care and caution at all times to avoid injury to plaintiff and others who might be lawfully upon said tracks or employed at said mine; and it was the legal duty of defendant not to back or run cars or trains down or in upon the track at said coal mine at and under the tipple of said mine without warning, notice, or signal to plaintiff and others who they knew, or had reason to believe, would or might have occasion to go over, or to be upon, said tracks at said point in doing their work, or in any other lawful manner. * * * That the locomotives of the defendant company, during all of the time plaintiff was employed at said coal mine, as just stated, backed the empty coal cars in over said railroad tracks, and would leave them blocked and standing on the track close to the tipple, at a distance usually of, to wit, eight to ten feet from the tipple, from which place they were taken by plaintiff and the other workmen and pushed or run under the tipple, when wanted to be loaded with coal. That this method of handling said cars, empty and loaded, by the locomotives and employés of defendant and by the

plaintiff and other workmen with him continued without change or variation during all of the time while plaintiff was employed at said coal mine, and up to the time of his injury, as hereafter stated. That defendant, its employés, and servants, in handling, running and backing its cars, trains, and locomotives on said track at and connecting with said coal mine, knew and were well aware that plaintiff with other workmen were engaged at work at and under the tipple of said mine. That defendant knew and ought to have known that plaintiff and other workmen with him were working upon the track close to the tipple upon which said empty cars were backed into said mine, and of the manner in which plaintiff had been doing his work, and that in this work it was necessary for plaintiff to go upon and across said railroad tracks at and near the tipple of the mine.   *   *   *

"Yet, notwithstanding the premises, plaintiff alleges that defendant totally and utterly failed and neglected its duty to plaintiff, in that, on, to wit, the 6th day of October, 1909, at or about the hour of 11 o'clock in the forenoon of said day, he was performing his work at the coal mine in the the usual way, as he previously had been doing. That defendant's locomotive, operated and controlled by the employés and servants of defendant, had shortly, to wit, about a half hour previous to said time, backed in on the said railroad track which passed under the tipple of said mine a train of empty, flat coal cars, and had left said coal cars standing on said track just west of the tipple in the usual way, the east car of which was, to wit, eight feet from the car which plaintiff and other workmen were engaged in loading under the said tipple. That plaintiff and the other workmen were about to shift or run the loaded car east from under the tipple, said car having been loaded, and, because of the great weight of the said loaded car, plaintiff and the other workmen were obliged to use the hand or crow bar. That plaintiff stepped across the railroad track upon which the loaded car stood and close to the west end of said car to get the bar needed in moving the car, and, when plaintiff was in the act of returning from the south side of the track, whither he had gone to get the bar, to the north side of the track where he was going to use the bar in shifting the car, and, when he was in front of the bunker, or iron coupler of the loaded coal car, his attention being upon the work which he was doing, and while plaintiff was exercising all due and rea-

sonable care and caution to avoid injury to himself, the locomotive steam engine of defendant, which was at the west or far end of the said flat cars, operated and controlled by its employés and servants, without any warning, signal, or notice of any kind whatever to plaintiff, wrongfully, negligently, and carelessly and unlawfully backed and forced said empty cars down against the loaded car, which was on the same track under the tipple, when plaintiff did not see said cars and did not expect, and had no reason to expect, that said empty cars would be so backed down upon said track, and the bunker or coupling equipment of the east or nearest one of the said empty flat cars so backed down to and against the loaded car on said tracks caught plaintiff between the bunkers or coupling equipment of the said two cars."

The second count is, for the most part, the same as the first; but, while the first count might be construed as alleging that the locomotive remained attached to the train until after the injury, the second count reasonably requires the construction that the locomotive, having left the six empty flat cars in the usual way and gone away, returned, after an interval of about thirty minutes, and backed them without warning. Considering the whole declaration, we agree with the construction placed upon it by defendant's counsel, viz. :

" The whole gist of the negligence charged in the declaration is that the defendant company brought in some cars and left them—went away—and then came back and shoved these cars down onto the plaintiff without notice or warning."

There was testimony from one witness, though not very satisfactory, that the six cars had been uncoupled from the train, and, from another witness, that the east car had been uncoupled before the plaintiff began his work. The case, however, appears to have been tried and submitted to the jury upon the theory that the locomotive continued attached to the entire train until after the injury to plaintiff, and we shall consider it upon that theory.

The real causes of the plaintiff's injuries are stated in plaintiff's brief, as follows:

" There are two reasons for the injury to plaintiff, as appears from this record, and which clearly appears to have caused it; and under the testimony we submit that these two reasons combined to, and did, cause plaintiff's injury.   These causes were, first, the backing in of the train too close to the tipple to permit the safe operation of cutting the highway; and, second, the act of the engineer who controlled the engine in driving back the train with too much force, in response to the conductor's signal to cut the highway.   Both of these causes were involved in and part of the work of operating and handling the trains and cars of defendant by its servants and employés; they constituted the negligent operation and management of the train and railroad business of the defendant upon the coal tracks leading into the coal mine."

Plaintiff recovered judgment, and defendant brings the record to this court for review, insisting that the record discloses no negligence on the part of defendant, and conclusively convicts the plaintiff of contributory negligence.

At the time the train backed in, plaintiff was working south of the tipple, at work entirely different from that which he was doing when injured, and saw the train stop near the tipple.   A slack coal car stood under the tipple, partly loaded, when the train backed in, but no one was then working on it, nor about the tracks.   The conductor rode in on the first car from the tipple, set the brakes on two cars, and blocked the trucks of the third car, and, also, according to the brakeman, of the first car.   After the train backed in, the manager, Mr. Walsh, directed plaintiff to get a couple of men and complete the loading of the slack coal car by shoveling the coal in that had spilled over the sides and ends of the car.   Plaintiff testified that there was from four to five feet of space between the car they were working on and the east car of the train, which backed in from the west.

" And then we wanted to shove the car ahead, and we have bars there to shove the car, so there was one alongside of us, and Mr. Hartley took the bar and tried to shift the car, and he could not do it.   I says, ' Wait a minute. I will go on the other side and see if I can find a bar.'   *

\* \* I went from the north side to the south side to look for the bar, and when I went across I could not find the bar. \* \* . \* I crossed in a place four or five feet wide between the empty and loaded cars. When I went over to the south side of the track, I walked right through and looked for a bar, and there was no bar there, so I started back—back to the north side again. Coming back I got caught; that is where I got caught. \* \* \* There was a block on the track against the wheel of the empty car. Before I was injured, I saw it. I did not notice when it was put there, but when I walked in there to do the work I seen it was put there. Every time they come down there they blocked the car and set the brakes. I noticed the brakes were on this day.

"*Q.* Did you see any of the men around the train of empty cars at any time during the time they were backed in there until the time you were injured?

"*A.* No; no men.

"*Q.* That were working on the engine with the train of empty cars, the railroad men? Did you see them?

"*A.* No. \* \* \* Before I started to work around there, I got under the car to see if the brake was set and if the car was blocked. I was taking particular pains to find out if the car was blocked, because I was going to work. I was hired to work. \* \* \*

"*Q.* Mr. Jolly, how long had you been working, doing this same kind of work, loading into those cars—the flats?

"*A.* Well, I have been working there—I was working from the 10th of July, as I told you, until the 6th of October; that is the day I was hurt.

"*Q.* How many times during the time you worked there did you load slack into the car?

"*A.* Oh, a few times, three or four times, maybe; I don't know exactly how many times. I did not count up the times I helped; we did not keep any book to tell how many times. \* \* \* When these cars came in there first, I paid no attention to them. I was busy working, and I didn't pay no attention at that time. I did not see whether there was any man around them, or whether there was not.

"*Q.* You paid no attention to the engine?

"*A.* I did not pay no attention to them at all. I was right in front of the tipple. I did not pay no attention at all. I did not know what they was going to do with them in the first place.

"*Q.* Didn't know whether they had placed them where they intended to leave them, or whether they had not?

"*A.* No; I did not know anything about it.

"*Q.* You did not know whether they were going to move them again, or whether they were not?

"*A.* When they left them there; yes. But when they first came in I didn't know what they wanted to do with them. I did not see the engine when I went between the cars. I did not know whether it was gone or not. It was supposed to be gone. I did not run up ahead to find out whether it was unhitched or not.

"*Q.* You did not do anything to find out, did you?

"*A.* I seen it was fast there; calculated to stay there. It was blocked up and everything like that like they used to do when they came in there.

"*Q.* Did you do anything to find out whether the engine had left or whether it had not?

"*A.* No; I did not."

The track descended from the west, and when the train was stopped the slack ran out, and it was necessary to back it again to uncouple the six cars which were to be left.   Just as plaintiff was returning from the south side, the conductor gave the signal, and the engine backed the car with sufficient force to overcome the resistance of the brakes and blocks, and move the car the short distance necessary to catch plaintiff.   There is no evidence in the record of any custom of giving signals by defendant's employés when placing the empty cars; but the evidence negatives any such custom, and is clearly to the effect that the work was done in the same way on the day of the accident as it was usually done, except that the east car was placed closer to the tipple than usual, and, perhaps, that the train was moved with greater force, in which respects the declaration makes no averment of negligence. The plaintiff had actual notice of the presence of the train from seeing it come in, and, so far as this record discloses, no other notice was ever given or required.   The trainmen had no actual notice that men were working about the car or on the tracks, but, on the contrary, the conductor saw that no one was working there when he

backed in, and plaintiff testified that this was actually the fact. The train was handled in the usual way, and, if the trainmen were guilty of negligence, it was not because of failure to give notice by signals or otherwise, but because of other acts of negligence not counted upon in the declaration. We are of the opinion that no negligent acts on the part of defendant, within the declaration, were established, and its motion for a directed verdict should have been granted.

The judgment is reversed, and a new trial granted.

Moore, McAlvay, Brooke, and Stone, JJ., concurred.