*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

ESTATE OF ADRIAN EDWIN VAUGHAN, by
ELIZABETH VAUGHAN, Personal Representative,

Plaintiff-Appellant,

v

NORFOLK SOUTHERN RAILWAY COMPANY
and BUCKEYE PARTNERS LP,

Defendants-Appellees,

and

BRAD CRAWFORD,

Defendant.

UNPUBLISHED
January 7, 2021

No. 347961
Wayne Circuit Court
LC No. 17-007518-NO

Before: GLEICHER, P.J., and K. F. KELLY and SHAPIRO, JJ.

PER CURIAM.

Plaintiff appeals the trial court's opinion and order granting summary disposition in favor of defendants, Norfolk Southern Railway Company (Norfolk) and Buckeye Partners, LP (Buckeye), pursuant to MCR 2.116(C)(10) (no genuine issue of material fact). For the reasons set forth in this opinion, we affirm.

## I. FACTS AND PROCEEDINGS

Buckeye provides fuel to Detroit Metropolitan Airport through underground pipelines in Norfolk's right-of-way property, which mostly run alongside Norfolk's railroad tracks.[1] Buckeye and Norfolk executed licensing agreements in 1991 and 1997 to provide Buckeye with access to the pipelines on Norfolk's property. Visual inspections of the pipelines were typically conducted

---

[1] At certain points the pipelines run underneath the tracks.

by Buckeye employees designated as right-of-way workers who walked the right-of-way weekly looking for any sign that a pipeline was leaking. Prior to the incident giving rise to this case, no Buckeye employee had been struck by a train while performing this task. The decedent, Edwin Vaughan, worked for Buckeye as a terminal operator and was not a right-of-way worker. On July 25, 2016, a report of abnormal pressure in the pipeline was received at a central pipeline control center in Texas and, because no right-of-way workers were available and the situation was potentially urgent, decedent was dispatched by the Texas center to visually inspect the pipeline which is approximately 17 feet from the tracks. Decedent did not wear a high-visibility vest and Norfolk was not informed that a Buckeye employee was entering their right-of-way in order to conduct an emergency inspection of the pipeline.

The locomotive that struck decedent is equipped with a mounted camera and the recording of the train's movement and warning sounds has been viewed by this Court. As the westbound train approached the Inkster Road intersection, approximately a half mile from the accident site, the train's horn blew for approximately 15 seconds. About 45 seconds later, at about 7:11 p.m., a figure (decedent) can be seen standing on the edge of one of the railroad ties. He is facing the oncoming train, but looking down at what appears to be a cell phone or similar object.[2] It was daylight and there was nothing obstructing decedent's view of the approaching train for at least a mile. When decedent came into sight, the train's engineer sounded the train's horn for about five seconds, but decedent did not visibly react. Plaintiff has presented expert reports that decedent's ability to hear the horn could have been limited by tall brush in the right-of-way or by airplanes making their final approach to Detroit Metro Airport, but no evidence that such a limitation actually occurred has been proffered.

Plaintiff, as personal representative of decedent's estate, brought this wrongful-death action against Norfolk and Buckeye. She alleged that Norfolk "failed to properly warn, take necessary precautions, and exercise reasonable care to the decedent of the oncoming train before he was negligently struck." However, given federal preemption issues, plaintiff has, at least in this Court, abandoned the claim that the train's engineer or conductor acted negligently. What remains of plaintiff's claim rests on the theory that Norfolk should have provided a flagman or lookout to accompany decedent or that Norfolk—in selling a license to enter the right-of-way—should have imposed additional duties on Buckeye such as mandatory training, notice to Norfolk of all entries on the right-of-way by Buckeye employees or provision of a lookout for its own workers when working on or near the tracks. As to Buckeye, plaintiff alleged liability under the intentional-tort exception to the Worker's Disability Compensation Act (WDCA), MCL 418.131(1). Defendants moved for summary disposition under MCR 2.116(C)(10) and the trial court granted the motions, concluding that plaintiff failed to establish genuine issues of material fact in support of either claim. Specifically, the court found that plaintiff failed to produce evidence that decedent was an invitee while on the tracks and so concluded that, at least during the critical moments, he was a trespasser to whom Norfolk owed a duty only to refrain from causing deliberate injury. The trial

---

[2] According to plaintiff, locating the pipeline's path can be difficult in the extensive plant growth in the area of the pipeline's path and when such difficulty occurs, the worker may access the pipeline map on his cell phone.

court also concluded that even if the decedent had been an invitee, Norfolk did not violate its duty of care because the oncoming train was an open-and-obvious hazard. The court also found that plaintiff failed to produce evidence of an intentional tort to impose liability against Buckeye. Plaintiff appeals the grant of summary disposition to both defendants.[3]

## II. NORFOLK

Plaintiff first argues that the trial court erred by granting Norfolk summary disposition. We disagree and conclude that whether or not Vaughan was an invitee, the case against Norfolk fails for several reasons. First, plaintiff does not allege that the premises itself, i.e., the right-of-way, should have been modified in some fashion or had a permanent warning in place and that the failure to do so rendered the premises unsafe. Second, even assuming that Norfolk had a duty to provide a flagman or stop the train, that duty cannot be implicated absent notice to Norfolk that a Buckeye worker was in the right-of-way. And here it is undisputed that Buckeye did not notify Norfolk that a Buckeye worker was on its premises. Thus, whether or not Norfolk had a duty to provide a flagman when Buckeye workers were in the right-of-way is not relevant because Norfolk did not have notice of decedent's entry into the right-of-way.[4] Cf. *Jolly v Michigan Century R Co*, 167 Mich 185, 187-188, 191; 132 NW2 487 (1911) (holding that the defendant-railroad company was not negligent when its engine pushed empty cars down the track that resulted in an employee of a coal mining company being stuck between cars when "[t]he trainmen had no actual notice that men were working about the car or on the tracks . . . .").

We also conclude that the duty plaintiff seeks to establish is not found in the license agreement or the past practices between the two companies. The 1997 agreement contained a provision stating, "Railway shall furnish, at the cost of Licensee, labor and materials to support its tracks and to protect its traffic during the installation, maintenance, repair, renewal or removal of the Facilities." The purpose of this provision was to "protect" Norfolk's tracks and traffic, not Buckeye's employees.

---

[3] We review de novo a trial court's decision whether to grant or deny summary disposition. See *Joseph v Auto Club Ins Ass'n*, 491 Mich 200, 205; 815 NW2d 412 (2012). A motion under MCR 2.116(C)(10) tests the factual sufficiency of a complaint. *Id*. In evaluating a motion brought under MCR 2.116(C)(10), we consider "the pleadings, admissions, and other evidence submitted by the parties in the light most favorable to the nonmoving party." *Patrick v Turkelson*, 322 Mich App 595, 605; 913 NW2d 369 (2018). Summary disposition "is appropriate if there is no genuine issue regarding any material fact and the moving party is entitled to judgment as a matter of law." *Id*. "There is a genuine issue of material fact when reasonable minds could differ on an issue after viewing the record in the light most favorable to the nonmoving party." *Allison v AEW Capital Mgt, LLP*, 481 Mich 419, 425; 751 NW2d 8 (2008).

[4] The parties dispute whether Norfolk must provide a flagman when work is performed within four feet of the tracks or within 25 feet. But whichever is correct, the duty to act cannot be implicated absent notice that someone is within the relevant area.

What remains then is plaintiff's claim that to render the premises reasonably safe, Norfolk had a duty to require Buckeye to provide notice of each entry into the right-of-way and provide adequate railroad safety training to its employees. These claims do not sound in premises liability but in ordinary negligence. They do not allege that Norfolk failed to make its premises safe, but that Norfolk failed to do enough to assure that Buckeye was keeping its employees safe.

"To establish a prima facie case of negligence, plaintiff must prove four elements: (1) a duty owed by the defendant to the plaintiff, (2) a breach of that duty, (3) causation, and (4) damages." *Finazzo v Fire Equip Co*, 323 Mich App 620, 635; 918 NW2d 200 (2018). "Duty is the legal obligation to conform one's conduct to a particular standard to avoid subjecting others to an unreasonable risk of harm." *Composto v Albrecht*, 328 Mich App 496, 499; 938 NW2d 755 (2019). Whether a duty exists is a question of law reviewed de novo. *Hills v Sears, Roebuck and Co*, 492 Mich 651, 659; 822 NW2d 190 (2012).

Given that Norfolk did not have a contractual duty to mandate training for Buckeye's employees or monitor their entries into the right-of-way, the claimed duty must arise from statute or common law. See *Hill*, 492 Mich at 660-661. Plaintiff has not, however, referred us to any statute or regulation requiring a railroad company to take those actions with respect to another company's employees. Further, we find no caselaw establishing such a duty. If Norfolk had notice that decedent was being dispatched to inspect a pipeline in the right-of-way, it would have been required to alert Buckeye that a train was scheduled to pass through the area. But, here, plaintiff is asserting that Norfolk needed to take affirmative steps to ensure that Buckeye gave notice of inspections and properly trained their employees.

Without any caselaw to support this novel claim, plaintiff relies on the principle that a landlord's duty to a tenant to maintain common areas applies to the tenant's guests even if the landlord does not know of their presence. See *Stanley v Town Square Co-op*, 203 Mich App 143, 147-148; 512 NW2d 51 (1993). Here, however, the issue is not who might encounter an ongoing hazard on the premises itself, but whether Norfolk has a duty to protect persons from a transient danger occurring on the premises absent knowledge that anyone is present or likely to be present on those premises. The landlord-tenant analogy is particularly inapplicable when the alleged duty in this case is not to alter the premises but to provide or require a lookout on occasions when a person is present. Because plaintiff has not presented any other basis from which we could impose the claimed duties in this case, we affirm the trial court's decision to grant Norfolk summary disposition.

III. BUCKEYE

Plaintiff also argues that the trial court erred by finding that she failed to produce sufficient evidence to support her claim against Buckeye under the intentional-tort exception to the WDCA.[5]

---

[5] "[T]he issue whether the facts alleged by plaintiff are sufficient to constitute an intentional tort is a question of law for the trial court, while the issue whether the facts are as plaintiff alleges is a jury question." *Gray v Morley*, 460 Mich 738, 742-743; 596 NW2d 922 (1999).

"[O]rdinarily, an employee's sole remedy against an employer for a workplace-related injury is provided by the WDCA." *Luce v Kent Foundry Co*, 316 Mich App 27, 32; 890 NW2d 908 (2016). The only exception is when the employer commits an intentional tort. MCL 418.131(1). For purposes of the WDCA,

> An intentional tort shall exist only when an employee is injured as a result of a deliberate act of the employer and the employer specifically intended an injury. An employer shall be deemed to have intended to injure if the employer had actual knowledge that an injury was certain to occur and willfully disregarded that knowledge. [MCL 418.131(1).]

Viewing the evidence in a light most favorable to plaintiff, we agree with her that there is a question of fact whether Buckeye knew that its employees walked on the tracks in the area where the accident occurred. Given that, we also agree that there is a question of fact whether Buckeye was negligent in failing to provide a lookout for decedent and to other lone workers when they walked the pipeline particularly since it was in an area subjected to high levels of noise from aircraft in their final approach to the airport. Buckeye's failure to advise Norfolk of the presence of Buckeye employees in the right-of-way and the claimed inadequacy of Buckeye's safety training also raise questions of fact sufficient to avoid summary disposition in a negligence case.

However, the claim against Buckeye is not a negligence claim, nor even a gross negligence claim. As interpreted by the Supreme Court, the intentional-tort exception to the WDCA requires an even higher degree of fault. The requirements to fall within the exception were described as follows in *Travis v Dreis & Krump Mfg Co*, 453 Mich 149, 180; 551 NW2d 132 (1996) (opinion by BOYLE, J.):

> If we read both sentences of the intentional tort exception together, it becomes evident that an employer must have made a conscious choice to injure an employee and have deliberately acted or failed to act in furtherance of that intent. The second sentence then allows the employer's intent to injure to be inferred if the employer had actual knowledge that an injury was certain to occur, under circumstances indicating deliberate disregard of that knowledge.

The *Travis* standard was further elaborated in *Palazzola v Karmazin Products Corp*, 223 Mich App 141, 149-150; 565 NW2d 868 (1997), which explained that a plaintiff alleging an intentional tort for purposes of the WDCA must establish the following elements:

> (1) "Deliberate act"—This includes both acts and omissions and encompasses situations in which the employer "consciously fails to act."

> (2) "Specifically intended an injury"—An employer must have had a conscious purpose to bring about specific consequences. When an employer is a corporation, a particular employee must possess the requisite state of mind in order to prove an intentional tort. Recognizing that direct evidence of intent is often unavailable, the *Travis* Court explained that the second sentence of the exception provides an alternative means of proving an employer's intent to injure. Plaintiff here relies upon this alternative to establish the employer's intent. To paraphrase

the *Travis* Court ... , a plaintiff alternatively can prove intent to injure by establishing the following elements:

> (1) "Actual Knowledge"—This element of proof precludes liability based upon implied, imputed, or constructive knowledge. Actual knowledge for a corporate employer can be established by showing that a supervisory or managerial employee had "actual knowledge that an injury would follow from what the employer deliberately did or did not do."

> (2) "Injury certain to occur"—This element establishes an "extremely high standard" of proof that cannot be met by reliance on the laws of probability, the mere prior occurrence of a similar event, or conclusory statements of experts. Further, an employer's awareness that a dangerous condition exists is not enough. Instead, an employer must be aware that injury is certain to result from what the actor does.

> (3) "Willfully disregard"—This element requires proof that an employer's act or failure to act must be more than mere negligence, e.g., failing to protect someone from a foreseeable harm. Instead, an employer must, in fact, disregard actual knowledge that an injury is *certain* to occur. [Citation omitted.]

The fact that no Buckeye employees were injured or killed by a train during the many years of weekly pipeline inspections before Vaughan's death is not dispositive.[6] However, it is relevant to whether Buckeye's management intended an injury and whether, given the facts of this case, the danger posed by trains was continuously operative or that injury was certain to occur. Given that the directive for decedent to walk the pipeline came from Texas, it is not even clear that on-site management or his supervisor knew that he was doing so. If not, there is little basis to conclude that the likelihood of injury was "willfully disregarded." Finally, the fact that decedent had the ability to see the train and step off the track, while also not dispositive, similarly weighs against the conclusion that Buckeye knew an injury was certain to occur.

We conclude that the facts of this case are much closer to those of *Travis* in which the Supreme Court rejected a claim of intentional tort than those of *Travis*'s companion case, *Golec v Metal Exch Corp*, where the Court found that the intentional-tort exception was applicable if the jury accepted the plaintiff's version of the facts. In *Travis*, the plaintiff was injured by a machine press that once every day or two would double cycle. Despite the fact that this danger occurred several times a week, the Supreme Court found that an injury was not certain to occur and that the danger was not "a continuously operative dangerous condition that would lead to certain injury" *Travis*, 453 Mich at 183. In addition to the fact that the danger was not continuous, the Court noted the evidence that the press cycled slowly enough that even if it double cycled an employee

---

[6] "[J]ust because something has happened before on occasion does not mean that it is certain to occur again. Likewise, just because something has never happened before is not proof that it is not certain to occur." *Travis*, 453 Mich at 174.

could avoid injury. *Id.* at 182. In *Golec*, by contrast, the defendant knew that the materials its employee was directed to dispose of in a furnace could explode without warning and cause injury regardless of the employee's level of care. *Id.* at 158. Even more significantly, Golec had suffered a minor burn injury earlier same day when an explosion occurred during the disposal, Golec brought this to his supervisor's attention, but the supervisor ordered him to continue placing the materials in the furnace. *Id.* at 158-159.

As this comparison to *Travis* and *Golec* demonstrates, the facts of this case, taken in the light most favorable to plaintiff, are not sufficient to meet the intentional-tort exception to the WDCA's exclusive remedy provision.

## IV. CONCLUSION

Edwin Vaughan's death was a tragedy that could and should have been avoided. However, the facts, even in the light most favorable to plaintiff do not establish either a relevant duty on the part of Norfolk nor an intentional tort on the part of Buckeye.

Affirmed.

/s/ Elizabeth L. Gleicher
/s/ Kirsten Frank Kelly
/s/ Douglas B. Shapiro